CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES, apelante, *v.* JUNTA DE RELACIONES DEL TRABAJO, apelada; FEDERACIÓN CENTRAL DE TRABAJADORES, interventora.

*Número:* AA-95-72          *Resuelto:* 24 de abril de 1997

*Francisco Ocasio Ortiz* y *José Roberto Feijoó,* abogados de la parte apelante; *María Susana Márquez Canals* y *Leticia Rodríguez García,* abogadas de la Junta de Relaciones del Trabajo, parte apelada; *José E. Carreras Rovira,* abogado de la Federación Central de Trabajadores, parte interventora.

PER CURIAM:

## I

El 18 de octubre de 1994 la Federación Central de Trabajadores presentó ante la Junta de Relaciones del Trabajo de Puerto Rico (en adelante la Junta) dos (2) peticiones para la investigación, la certificación y el reconocimiento como representante de los empleados profesionales y "clericales" del *Centro de Recaudaciones de Ingresos Municipales* (en adelante el C.R.I.M.). Previa audiencia pública ante

un juez administrativo y memorandos de derecho, el 8 de junio la Junta concluyó que el C.R.I.M. era un patrono según el Art. 2 de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 63, y que los empleados de oficina, los técnicos y profesionales del C.R.I.M. tenían derecho a unionarse. Ordenó elecciones en cada una de las unidades apropiadas (de empleados profesionales y no profesionales), para determinar el representante "a los fines de la negociación colectiva" establecido en el Art. 5(3) de la referida ley. 29 L.P.R.A. sec. 66(3). Sin éxito, el C.R.I.M. solicitó reconsideración.

Oportunamente apeló ante nos, conforme al entonces vigente Art. 3.002(d) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(d)). Plantea éste, en síntesis, que la Junta carecía de jurisdicción por no ser un patrono según la Ley de Relaciones de Trabajo de Puerto Rico. En auxilio de nuestra jurisdicción, el 26 de julio paralizamos los procedimientos de representación y las elecciones.

## II

■  El Art. II, Secs. 17 y 18 de nuestra Constitución, L.P.R.A., Tomo 1, reconoce a todo empleado del sector *privado* el derecho a organizarse y a negociar colectivamente sus condiciones de trabajo, *mas no así a todos los del sector público.* Nuestra ley fundamental configura la negociación colectiva *sólo* para los empleados públicos que trabajen en " 'agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados' ". *J.R.T. v. Corp. del Conserv. Música P.R.*, 140 D.P.R. 407, 428 (1996).

■  En *A.A.A. v. Unión Empleados A.A.A.*, 105 D.P.R. 437 (1976), examinamos por primera vez los criterios determinantes sobre la funcionalidad de una instrumentalidad del Gobierno como una empresa o un negocio privado,

a los fines del derecho a la negociación colectiva.([1]) Concluimos que "no existe un solo criterio para determinar cuando una agencia o instrumentalidad del gobierno funciona o no como una empresa o negocio privado, y goza o no, en consecuencia, del derecho a la huelga". Íd., pág. 450. Véase *J.R.T. v. Corp. del Conserv. Música P.R.*, supra.

Existen, sin embargo, dos (2) criterios "de vital importancia para la definición de los términos que nos ocupan". *A.A.A. v. Unión Empleados A.A.A,* supra, pág. 452. El primero es *la naturaleza intrínseca* de la agencia o instrumentalidad pública. Si ésta rinde servicios que nunca han sido prestados por empresas privadas, entonces su naturaleza tiende a ser *gubernamental,* más bien que de negocio privado. Véase 3 Diario de Sesiones de la Convención Constituyente 1618–1620 (1952). En cambio, si sus servicios son como los que prestan empresas privadas, y lo hace con propósitos lucrativos, su naturaleza tiende a ser la de un negocio privado.

El otro criterio fundamental, formulado en la Asamblea Constituyente, versa sobre la reglamentación de *las condi-*

---

([1]) Estos criterios son:

"... [S]i los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista: la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado; el punto hasta donde el reconocimiento a los trabajadores de la agencia de los derechos a que se refiere el primer párrafo de la Sec. 18 concuerda o no con el esquema constitucional.

"Ningún criterio es determinante por sí solo del problema que nos ocupa. Debemos examinar en cada caso la conjunción de factores existentes para a su luz resolver si la agencia concernida funciona o no como un negocio privado en el sentido constitucional." *A.A.A. v. Unión Empleados A.A.A.,* 105 D.P.R. 437, 455–456 (1976).

*ciones de trabajo.* La cuestión medular es si el salario, permanencia en el puesto, las vacaciones y otras condiciones similares están *protegidas* por ley o no. Si lo están, entonces la agencia o instrumentalidad tiende a ser gubernamental. Diario de Sesiones, *supra*, págs. 1613–1621. Como claramente explicó el delegado, Lcdo. Luis Negrón López, el plan esencial al aprobarse la Constitución visualizaba a los trabajadores protegidos de una de dos (2) maneras: (*a*) por alguna legislación garantizadora de unas condiciones básicas de trabajo, o, en su ausencia (*b*) por algún convenio colectivo y los derechos relativos a su negociación. Si el empleado estaba protegido por algún esquema normativo estatal, entonces carecía del derecho a negociar colectivamente, porque se entendía que la protección de ley sobre las condiciones de trabajo era *equivalente* a lo que la negociación colectiva le ofrecía como seguridad. *J.R.T. v. Corp. del Conserv. Música P.R.*, supra.

## III

La Ley Núm. 80 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 5801 *et seq.*, creó el C.R.I.M. como parte de un conjunto de leyes dirigido a ampliar los poderes y las facultades de los municipios. En virtud de esta ley, la Asamblea Legislativa cedió a los municipios la totalidad de la contribución sobre la propiedad mueble e inmueble. El C.R.I.M. se estableció únicamente "con el propósito de que, en representación de los municipios, bajo el control de éstos asuma las responsabilidades relativas a la contribución sobre la propiedad" que antes desempeñaba el Gobierno Central. Exposición de Motivos de la Ley Núm. 80, *supra*, 1991 (Parte 1) Leyes de Puerto Rico 437.

A la luz de su ley orgánica y los criterios pertinentes enmarcados, examinemos si es "patrono" para propósito de la negociación colectiva.

A. *Naturaleza del C.R.I.M.* Es el C.R.I.M. una entidad independiente y separada de cualquier otra agencia o

instrumentalidad del Gobierno. Está encargada de los servicios fiscales, y su responsabilidad primaria es "recaudar, recibir y distribuir los fondos públicos" que corresponden a los municipios. Art. 3 de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5802. De hecho, la citada ley le transfirió "todos los poderes, funciones y obligaciones conferidos por ley o reglamento al Departamento de Hacienda" en relación con la tasación, la notificación de imposición, la determinación y el cobro de la contribución sobre la propiedad. También trasladó todo el personal del Negociado de Contribución sobre la Propiedad, Herencias y Donaciones del Departamento de Hacienda que tenían el derecho de retención, según la Ley de Personal del Servicio Público de Puerto Rico. Art. 23(f) (Disposiciones transitorias) de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5801.

■ Se desprende, pues, que el C.R.I.M. lleva a cabo una función que *tradicionalmente corresponde al Estado*, como lo es todo lo relacionado con la recaudación de impuestos. *Dicha función nunca ha sido desempeñada por empresas privadas.*

B. *Autonomía Fiscal.* En su decisión, la Junta descansó substancialmente en la apreciación de la situación financiera del C.R.I.M. Determinó que tiene "verdadera autonomía fiscal toda vez que la ley le autoriza a disponer, controlar y administrar sus fondos operacionales". Apoyó esa conclusión en el Art. 4(n) de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5803(n) que faculta al C.R.I.M. a "[c]ontrolar y administrar sus fondos operacionales y decidir el carácter y necesidad de todos sus gastos y la forma en que los mismos habrán de incurrirse y autorizarse", y en que el Art. 14 de dicha ley, 21 L.P.R.A. sec. 5813, le permite al C.R.I.M. tomar dinero a préstamo y emitir pagarés, en anticipación del cobro de contribuciones e ingresos estimados, que habrían de ser recibidos durante el período fiscal corriente para pagar gastos presupuestarios, que serían incurridos durante dicho período fiscal.

■ Contrario al criterio de la Junta, concluimos que,

en realidad, el C.R.I.M. *no tiene verdadera autonomía fiscal* debido a una incapacidad de facto para generar sus propios fondos. *J.R.T. v. Corp. del Conserv. Música P.R.*, supra. Según hemos expuesto, su razón de ser y responsabilidad primaria es recaudar, recibir y distribuir los fondos públicos de los municipios que provengan de las distintas fuentes indicadas en la ley. Art. 16 de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5815.

■ Como señalamos en *U.P.R. v. Asoc. Pur. Profs. Universitarios*, 136 D.P.R. 335 (1994), las empresas que operan con fines de lucro obtienen ganancias que provienen de la venta de sus productos a precios que sobrepasan sus costos. Bajo este esquema, las decisiones gerenciales de la empresa tienen un impacto directo sobre sus fondos, ya sea mediante el control de los costos o la determinación de los precios. En *J.R.T. v. Corp. del Conserv. Música P.R.*, supra, pág. 437, aplicamos dicha normativa y concluimos que "[p]rivado de medios propios suficientes para generar ingresos, el Conservatorio no tiene ni remotamente el espacio que tienen las empresas privadas para manipular los elementos de *costos y ganancias* de modo que pueda encarar con éxito los reclamos que inevitablemente surgen de la negociación colectiva".

Por mandato legislativo, a partir del Año Fiscal 1994–1995, el C.R.I.M. separará anualmente, para cubrir sus gastos de operación y funcionamiento, hasta un máximo del cinco por ciento (5%) del total de las recaudaciones anuales que se obtengan en concepto de la contribución municipal sobre la propiedad en el Año Fiscal inmediatamente anterior. Art. 13 de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5812, según enmendada.

Aun así, la Junta concluyó que el C.R.I.M. tiene verdadera autonomía fiscal, toda vez que la ley le autoriza a disponer, controlar y administrar sus fondos operacionales. Al respecto sostuvo que la ley faculta al C.R.I.M. a decidir el carácter, la necesidad y la forma en que habrá de incu-

rrirse y autorizarse sus gastos. Art. 4(n) de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5803(n).

Esa conclusión es errónea y no guarda relación con la naturaleza real del C.R.I.M. La facultad de aprobar su propio presupuesto para gastos administrativos no implica que tiene la autonomía fiscal que caracteriza a una empresa privada o a aquellas agencias gubernamentales que funcionan como tales. Al respecto está obligado a "[r]endir al Gobernador de Puerto Rico, a la Asamblea Legislativa y a la Asamblea Municipal de cada municipio, no más tarde del 30 de enero de cada año, un informe anual sobre todas las actividades y logros del centro, acompañado de los informes financieros anuales". Art. 7(h) de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5806(h).

Las facultades y funciones del C.R.I.M. no lo enmarcan dentro de los conceptos "negocio lucrativo" y "beneficio pecuniario", según nuestra interpretación jurisprudencial. *J.R.T. v. Corp. del Conserv. Música P.R.*, supra; *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra.

En *resumen*, tanto por sus fines eminentemente públicos como por su esencial dependencia presupuestaria, el C.R.I.M., como institución, se asemeja a una agencia gubernamental típica. Véase *J.R.T. v. Corp. del Conserv. Música P.R.*, supra.

C. *Reglamentación de las Condiciones de Trabajo*. El Art. 10 de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5809,(²) establece que el C.R.I.M. es "un administrador

---

(²) El Art. 10 establece, en lo pertinente:

*Sec. 5809.   Personal*

"El Centro será un administrador individual según el término se define en las secs. 1301 *et seq.* del Título 3, conocidas como "Ley de Personal del Servicio Público" y adoptará las reglas y reglamentos necesarios para la administración de su sistema de personal, previa aprobación de la Junta. Dichas reglas garantizarán a cualquier persona, que con anterioridad a sus servicios como empleado de confianza del Centro fuere empleado en el servicio de carrera en cualquier otra agencia o en un municipio, el derecho a que se le reinstale en un puesto de igual o similar naturaleza y categoría al que ocupaba en el servicio de carrera al momento en que pasó a ocupar un puesto

individual" conforme al término definido en la *Ley de Personal del Servicio Público de Puerto Rico*, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A sec. 1301 *et seq.* El objetivo principal de dicha ley es supervisar la aplicación del principio de mérito en todo el Sistema de Personal del Servicio Público, el cual incluye a los administradores individuales. Sec. 5.1 de la Ley Núm. 5 (3 L.P.R.A. sec. 1341). Por su parte, la Sec. 5.7 (3 L.P.R.A. sec. 1347), establece que los administradores individuales deberán adoptar un reglamento en armonía con las disposiciones de la Ley de Personal del Servicio Público de Puerto Rico sobre las áreas esenciales al principio de mérito. Véanse: *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496 (1989); *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982).

■ Reiteramos que la reglamentación de las condiciones de trabajo del empleado público es un *factor importante* en la determinación de si tal empleado tiene derecho constitucional a la negociación colectiva. Si no está protegido por la Ley de Personal del Servicio Público de Puerto Rico, o por algún otro régimen análogo de servicio civil, su carácter como trabajador se asemeja al de las empresas privadas y, por lo tanto, existiría un fundamento significativo en favor de su derecho a la negociación colectiva. *J.R.T. v. Corp. del Conserv. Música P.R.*, supra.

■ Según queda señalado, el C.R.I.M., como administrador individual, está integrado al sistema de personal del Gobierno y sus empleados están protegidos por la garantías de la Ley de Personal del Servicio Público de Puerto Rico. *En este respecto, la situación del C.R.I.M. se asemeja a una agencia gubernamental típica.* Véase *J.R.T. v. Corp. del Conserv. Música P.R.*, supra.

D. *Otros factores.* La Junta también concluyó que las facultades de que está investido el C.R.I.M. para llevar a

---

de confianza. A esos fines, se podrán utilizar los mecanismos reglamentarios disponibles para garantizarle una retribución cónsona con su competencia y conocimiento especial." 21 L.P.R.A. sec. 5809.

cabo sus funciones lo enmarcan dentro del concepto que define las instrumentalidades corporativas mencionadas en el Art. 2 de la Ley de Relaciones del Trabajo de Puerto Rico, *supra*. Dictaminó que dichas facultades y funciones lo ubican dentro de los conceptos "negocio lucrativo" y "beneficio pecuniario" en la Ley Núm. 130, *supra*, según interpretados en *Junta Rel. Trabajo v. Junta del Muelle*, 71 D.P.R. 154 (1950). *Incidió*.

La concesión de amplios poderes y facultades no es en sí un criterio que *automáticamente* signifique que la instrumentalidad gubernamental funciona como una empresa privada. "La enumeración de poderes y facultades es pertinente sólo en la medida en que dichos poderes y facultades sean mayormente del tipo que tienen las empresas privadas solamente." *J.R.T. v. Corp. del Conserv. Música P.R.*, supra. El C.R.I.M., como reconocen los apelados y la Junta, tiene todos los poderes y las obligaciones conferidos por ley o reglamento al Departamento de Hacienda, en relación con la tasación y la notificación de la contribución sobre la propiedad. Actúa en representación de los municipios y bajo el control de éstos, asumió las responsabilidades relativas a la contribución sobre la propiedad que antes desempeñaba el Gobierno Central. Exposición de Motivos de Ley Núm. 80, *supra*.

## IV

*En conclusión*: analizados los hechos del caso de autos, a la luz de los criterios jurídicos expuestos recientemente en *J.R.T. v. Corp. del Conserv. Música P.R.*, supra, *resolvemos que el C.R.I.M. no es "patrono para propósitos de negociación colectiva"*.

*Se dictará sentencia revocatoria de la Decisión y orden de elecciones de la Junta de Relaciones del Trabajo de 8 de junio de 1995.*

El Juez Asociado Señor Hernández Denton emitió una

opinión disidente, a la cual se unió el Juez Asociado Señor Rebollo López.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Asociado Señor Rebollo López.

Por entender que la Ley de Relaciones del Trabajo de Puerto Rico nos priva de autoridad para revisar la orden de la Junta de Relaciones del Trabajo (en adelante la Junta), y que en esta etapa de los procedimientos debemos abstenernos de evaluar la corrección del decreto de que el Centro de Recaudación de Ingresos Municipales (en adelante el C.R.I.M.) es un patrono y que sus empleados de oficina, técnicos y profesionales tienen derecho a sindicarse para la negociación colectiva, disentimos. Al así decidir, reiteramos nuestra posición a los efectos de que este Tribunal carece de jurisdicción para revisar las órdenes emitidas por la Junta, trabadas al amparo de la Ley de Relaciones del Trabajo de Puerto Rico, en las que ésta no ha determinado que se ha incurrido en una práctica ilícita del trabajo, a tenor del Art. 9 de dicha ley, 29 L.P.R.A. sec. 70. Véase *U.P.R. v. Asoc. Pur. Profs. Universitarios*, 136 D.P.R. 335 (1994), opinión disidente. Según el esquema de ley vigente, es sólo al revisar una determinación de práctica ilícita que podríamos examinar colateralmente las determinaciones previas de la Junta con respecto a controversias relativas a representación sindical.

I

La Federación Central de Trabajadores presentó ante la Junta sendas peticiones para que se le reconociera como representante de ciertos empleados profesionales y de ciertos empleados no profesionales del C.R.I.M. Luego de celebrar una audiencia pública, la Junta determinó que el

C.R.I.M. era un patrono según el Art. 2(z) y (11) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 63, y estructuró las dos (2) unidades apropiadas de empleados que tendrían derecho a sindicarse en: (*a*) empleados de oficina, y (*b*) empleados técnicos y profesionales. Por entender que se habían suscitado controversias de representación, consideró apropiado ordenar la celebración de elecciones para resolverlas.

Tras solicitar sin éxito la reconsideración a la Junta, el C.R.I.M. apeló ante nos amparándose, sin más discusión, en el Art. 3.002(d) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(d)), entonces vigente.[1] A petición del C.R.I.M., en auxilio de nuestra jurisdicción, el 26 de julio de 1995 una Sala Especial de Verano paralizó los procedimientos de representación y elecciones. Por su parte, la Junta oportunamente compareció y solicitó que se desestimara el recurso de autos "por no ser apelable en esta etapa de los procedimientos la determinación emitida por la Junta el 8 de junio de 1995". Oposición a recurso de apelación, pág. 10.

## II

La ley especial que rige las relaciones obrero-patronales en Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 61 *et seq.*, conocida como la Ley de Relaciones del Trabajo de Puerto Rico, establece un esquema de revisión judicial que permite nuestra intervención sólo en los casos en que la Junta haya emitido una decisión final sobre una práctica ilícita del trabajo. En relación con las decisiones y órdenes en casos de representa-

---

[1] Dicho inciso disponía lo siguiente:

"d) Mediante recurso de apelación [el Tribunal Supremo] revisará las decisiones de los siguientes organismos administrativos: Junta Azucarera, Junta de Salario Mínimo, Junta de Relaciones del Trabajo y Comisión Industrial, de conformidad a lo dispuesto por ... la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico." 1994 (Parte 3) Leyes de Puerto Rico 2807.

ción, la Asamblea Legislativa claramente dispuso que éstas sólo serán revisables mediante un ataque colateral, subsiguiente a una decisión y orden por prácticas ilícitas de trabajo. Al respecto, el Art. 5(3) de la ley dispone, en lo pertinente, lo siguiente:

> (3) Cuando se suscite una controversia relativa a la representación de los empleados, la Junta podrá investigar y resolver tal controversia. ... Las conclusiones de la Junta, el procedimiento electoral, la resolución de la controversia relativa a la representación, la determinación de la unidad y el certificado del resultado de cualquier elección así llevada a cabo, serán finales y *estarán sujetos a revisión judicial sólo de la manera que se dispone en el inciso (4) de est[e artículo]*. (Énfasis suplido.) 29 L.P.R.A. sec. 66.

Sobre la única manera dispuesta en ley para revisar judicialmente las conclusiones de la Junta en procedimientos de representación, como el de autos, el inciso 4 del Art. 5 de la Ley Núm. 130, *supra*, dispone lo siguiente:

> (4) Siempre que una orden de la Junta dictada de acuerdo con [el artículo 9 de esta Ley] se base, en todo o en parte, en hechos certificados después de una investigación o audiencia pública efectuada de acuerdo con el inciso (3) de est[e artículo], y exista una petición para que se ponga en vigor dicha orden y para que se revise, la certificación y el expediente de la investigación o audiencia efectuada de acuerdo con el inciso (3) de est[e artículo] se incluirán en la transcripción del expediente completo que ha de presentarse de acuerdo con [el artículo 9] y entonces el decreto del tribunal, poniendo en vigor, modificando, o anulando en todo o en parte la orden de la Junta, se hará y se expedirá a base de los autos, el testimonio y los procedimientos expuestos en dicha transcripción. 29 L.P.R.A. sec. 66(4).

El referido artículo 9, por su parte, dispone sobre el procedimiento para que la Junta emita órdenes relacionadas a la comisión de prácticas ilícitas del trabajo. 29 L.P.R.A. sec. 70(1). En su inciso (2)(a) y (b) establece el procedimiento que habrá de seguirse ante el Tribunal Supremo para solicitar el cumplimiento o la revisión de una decisión y orden de la Junta en casos de práctica ilícita de trabajo. 29 L.P.R.A. sec. 70(2)(a) y (b).

En su obra sobre derecho laboral, los profesores Deme-
trio Fernández y Celina Romany concluyen que la alusión
al artículo 9 "pone de relieve el principio que también im-
pera en la jurisdicción federal de que las decisiones del
procedimiento de representación sólo son revisables a tra-
vés de la vía colateral de la comisión de prácticas ilícitas de
trabajo". D. Fernández y C. Romany, *Derecho Laboral: Ca-
sos y Materiales*, Río Piedras, Ed. U.P.R., 1987, pág. 362.[2]
Véase, además, D.M. Helfeld, *Derecho Laboral*, 64 Rev.
Jur. U.P.R. 821, 842 (1995).

El propósito de este esquema de revisión judicial es pro-
mover la paz industrial. Con ello se pretende evitar que los
patronos acudan a los tribunales para dilatar los procedi-
mientos de elecciones, además de que, en muchos casos, el
resultado del escrutinio tornará en académica dicha
impugnación. Véase R.A. Gorman, *Basic Text on Labor
Law: Unionization and Collective Bargaining*, Minnesota,
Ed. West Publishing Co., 1976, pág. 11. Fue precisamente
la intención del Legislador evitar esas dilaciones y la ex-
tensa jurisprudencia interpretativa del Tribunal Supremo
federal así lo ha ratificado. Véanse: *Boire v. Greyhound
Corp.*, 376 U.S. 473 (1964); *A.F. of L. v. Labor Board*, 308
U.S. 401 (1939).

Por nuestra parte, en el pasado hemos reconocido y en-
dosado este esquema de revisión judicial limitado única-
mente a decisiones finales de la Junta sobre prácticas ilí-
citas del trabajo. En *Junta Relaciones Trabajo v. Ortega*,
79 D.P.R. 760, 765 esc. 5 (1956), expresamos que "[u]na
resolución de la Junta en un procedimiento de representa-
ción no es revisable. ... Si el procedimiento de representa-
ción culmina en una certificación designando a una unión
como el representante de los trabajadores en cuanto a ne-

---

[2] A los mismos efectos se refirió la profesora Torres Peralta al expresar: "The
orders of the local and federal boards in regard to questions of representation are not
as a general rule directly reviewable by the courts, inasmuch as they are not final
orders. Review of this type of proceedings can be had only as an incident to the
review of an order of the board in connection with its power to prevent unfair labor
practices." (Escolio omitido.) S. Torres Peralta, *The Regulation of the Field of Labor
Relations in the Commonwealth of Puerto Rico*, 18 Rev. C. Abo. P.R. 117, 162 (1958).

gociar colectivamente, y luego al patrono se le imputa una práctica ilícita de trabajo por negarse a negociar con la unión, el patrono puede en el recurso de práctica ilícita —que es revisable por nosotros— impugnar la jurisdicción de la Junta". (Citas omitidas.) Además, señalamos que *"el hecho de que el patrono impugne la jurisdicción de la Junta es inmaterial* en cuanto a la cuestión ante nos, *a menos que,* según se ha indicado antes, *el caso esté claramente fuera de la facultad de la Junta".* (Énfasis suplido.) Íd.

Asimismo en *Luce & Co. v. Junta Relaciones del Trabajo,* 82 D.P.R. 96, 98–99 (1961), expresamos que, según se ha resuelto en la jurisdicción federal, no constituye una orden final sujeta a revisión: "a) una resolución sobre certificación para la determinación de representantes a los fines de negociación colectiva, ... a menos que se haya dictado una orden final en un procedimiento para la prevención de prácticas ilícitas basada en hechos certificados en un procedimiento de representación ...; f) una orden para la celebración de elecciones a los fines de determinar la unidad contratante para fines de negociación." (Citas omitidas.) En dicho caso concluimos que una resolución de la Junta, que desestime una solicitud para que se instaran cargos por práctica ilícita de trabajo, no era una orden final revisable por este Tribunal, según dispone el Art. 9(2)(b) de la Ley Núm. 130, *supra,* 9 L.P.R.A. sec. 69(2)(b).

Recientemente en *U.P.R. v. Asoc. Pur. Profs. Universitarios,* supra, págs. 348-349, una mayoría de este Tribunal reiteró que este

... esquema ... persigue propósitos que compartimos y debemos acogerlo en nuestra jurisdicción en todo lo posible, sobre todo en vista de que nuestra Ley de Relaciones del Trabajo tuvo a la federal como modelo. Dejamos claramente establecido, —como no lo habíamos hecho nunca antes— que de ordinario la revisión judicial de una orden de la Junta, en casos corrientes de representación, procede únicamente por la vía colateral, como parte de una determinación de la Junta sobre práctica ilícita de trabajo. Protegemos así los legítimos intereses del trabajador en Puerto Rico. (Énfasis suprimido.)

En la jurisdicción federal se ha establecido una excepción a la normativa antes reseñada. En *Leedom v. Kyne*, 358 U.S. 184 (1958), se decidió que procedía la revisión judicial directa cuando la propia Junta admitió haber actuado en exceso de los poderes que se le delegaron, así como en contra de una clara disposición estatutaria, y cuando de otro modo los empleados que llevaron la acción no tendrían manera de revisar la actuación de la Junta que les privó de un derecho que el estatuto explícitamente les otorgó.

En *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, una mayoría del Tribunal aplicó esa excepción y revocó una decisión de la Junta que había determinado que los profesores de la Universidad de Puerto Rico eran empleados con derecho a organizarse y a negociar colectivamente. No obstante, preocupados por el impacto de esta decisión sobre la paz laboral en el país, varios miembros de este Tribunal disentimos por separado.

El Juez Asociado Señor Negrón García criticó "la ingeniosa pero frágil tesis de *'circunstancias especiales'* ... que sólo serviría como obstáculo para plasmar nuestro *'rechazo de lo injusto'* ". (Énfasis suplido y en el original.) *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, pág. 404, opinión disidente del Juez Asociado Señor Negrón García. El Juez Asociado Señor Rebollo López también censuró la decisión por ser totalmente improcedente "debido a que este Tribunal no tiene jurisdicción para expresarse sobre dicho derecho en esta etapa de los procedimientos". (Énfasis suprimido.) *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, pág. 414, opinión disidente del Juez Asociado Señor Rebollo López.

Por nuestra parte, advertimos que la decisión del Tribunal era contraria al mandato legislativo y a la política pública prevaleciente:

Al resolver lo contrario, la opinión del Tribunal pasa por alto el texto claro de nuestra Ley, el mandato de nuestra propia jurisprudencia y la fuerza persuasiva de la doctrina en la jurisdicción federal. Al concluir que en estas circunstancias tenemos

autoridad para revisar las determinaciones de la Junta, la opinión del Tribunal destruye el delicado esquema que nuestra Asamblea Legislativa diseñó cuidadosamente hace casi cincuenta (50) años con el propósito de proteger a nuestra clase trabajadora de las tácticas dilatorias de patronos que se oponen a la sindicación de los obreros. (Escolio omitido.) *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, pág. 424, opinión disidente.

Conscientes de estos señalamientos, la mayoría limitó el alcance de sus pronunciamientos "a los hechos particulares de este caso". *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra. Además, en respuesta a nuestras críticas afirmó que "cualquier imputación sobre supuestos peligros para la clase obrera resultantes de ella son pura exageración sin fundamento lógico o normativo alguno". Íd.

Al extender el alcance de la excepción establecida en *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, al caso de los empleados de oficina y mantenimiento del C.R.I.M., la opinión *per curiam* en el caso de autos confirma que los peligros que habíamos anticipado en nuestro disenso tenían fundamentos y no eran exagerados.

## III

Para nuestra sorpresa, en la consideración de este recurso, la opinión *per curiam* del Tribunal aborda directamente los méritos de la controversia sin tan siquiera analizar la cuestión jurisdiccional. De hecho, la opinión mayoritaria no menciona que la Junta se opuso a la expedición del caso precisamente por razones jurisdiccionales.

En su comparecencia ante nos, la Junta sostuvo que a tenor del ordenamiento laboral, este Tribunal no sólo no tenía jurisdicción para intervenir con la decisión que ordenaba la celebración de elecciones, sino que también por razones prudenciales no debía intervenir en esta etapa del procedimiento administrativo. En particular expresó sus serias preocupaciones con la revisión judicial a destiempo por parte de este Tribunal y advirtió que la intervención en este caso continuaría erosionando la autoridad de ese

cuerpo administrativo en perjuicio de la clase obrera del país. Planteó la Junta:

> ... [N]o cuestionamos su autoridad para revisar las cuestiones de Derecho de un caso resuelto por la Junta y para decidir en última instancia si se trata o no de un "patrono" bajo la Ley 130, supra. *Lo que intentamos transmitir vehementemente es la necesidad y deseabilidad de que no se continúe erosionando mediante la aplicación de excepciones, la norma general de que los casos de representación sólo son revisables por la "vía colateral",* tal como el estatuto dictamina y según avalado por los numerosos precedentes judiciales federales y la sabia filosofía jurídica-laboral que la sustenta. Lo que se pretende es un balance de fuerzas en que se intent[a] garantizar la oportunidad de unos emple[ados] de elegir libremente un representante sindical para ejercer el derecho constitucional a la negociación colectiva ... El tiempo que conlleva la revisión judicial directa de una determinación sobre si se es o no "patrono" bajo nuestra Ley, conlleva unos efectos detrimentales para el ejercicio del referido derecho constitucional por parte de los trabajadores. La revisión judicial sólo por la vía colateral tiene el propósito de proteger los intereses de los trabajadores en asegurar un representante colectivo sin menoscabar el derecho del patrono de cuestionar si fue correcta la determinación de que les aplica nuestra Ley, lográndose así un mejor balance de intereses. (Énfasis en el original suprimido y énfasis suplido.) Oposición a recurso de apelación, págs. 8–9

La opinión *per curiam* ignora esta exhortación de la Junta y de nuevo interviene a destiempo para impedir que los empleados del C.R.I.M. puedan votar en unas elecciones y decidir si quieren organizarse para negociar colectivamente. Contrario a la normativa histórica a los efectos de que la revisión judicial de una orden de representación de la Junta procede sólo por la vía colateral, la opinión *per curiam* permite que un patrono impugne judicialmente antes de que se emita una orden de práctica ilícita. Con esta decisión debilitamos aún más la autoridad de la Junta y concedemos a los patronos otro instrumento para dilatar el procedimiento de elecciones y obstaculizar la negociación colectiva.

A diferencia del caso de *U.P.R. v. Asoc. Pur. Profs. Universitarios,* supra, los empleados que solicitaron la certificación en el caso de marras no son claramente empleados

gerenciales. Todo lo contrario, del expediente se desprende que éstos son, en su mayoría, empleados de oficina y mantenimiento. Por ende, no están palmariamente fuera del alcance de la ley, como expuso la mayoría en *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, al razonar que cuando la unidad propuesta por la Junta se trate en su totalidad de empleados gerenciales, la controversia sería relativa a su jurisdicción.

Además, de la ley que creó al C.R.I.M., Ley Núm. 80 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 5801 *et seq.*, no se desprende explícitamente que ésta sea una agencia excluida de la aplicación de la Ley de Relaciones Laborales de Puerto Rico o cuyos empleados carezcan del derecho a sindicarse. Contrario a la normativa establecida en *Leedom v. Kyne*, supra, y en *U.P.R. v. Asoc. Pur. Profs. Universitarios*, supra, éste es uno de esos casos en que la Junta se ve obligada a aplicar los criterios jurisprudenciales para determinar si se trata de un "patrono" cubierto por la Ley de Relaciones Laborales de Puerto Rico. Ésta es una de las dependencias del Gobierno que caen dentro del área gris de dicha legislación y debemos abstenernos en esta etapa de los procedimientos de revisar la determinación inicial de la agencia especializada en estos asuntos. Claramente esta decisión requiere un conocimiento particular del asunto y en esta etapa debemos ser deferentes a su determinaciones.

Al resolver contrario al texto y al espíritu de la ley, el Tribunal le concede al patrono una herramienta poderosísima para dilatar la celebración de elecciones e impedir que los obreros ejerzan sus derechos a organizarse en uniones y a negociar colectivamente. Una vez más, nuestra intervención a destiempo tiende a frustrar los intentos de los empleados de ejercer esos derechos y contribuye a la demora en el proceso de organización laboral. Recordemos que si hay un área del derecho laboral en la cual la implantación debe ser expedita, ésta es los asuntos electorales

reglamentados por la Ley de Relaciones del Trabajo de Puerto Rico. Helfeld, *supra,* pág. 840.

Por las razones que anteceden, disentimos del curso de acción seguido por la mayoría y reafirmamos nuestra posición de que, en casos como éste, este Tribunal carece de jurisdicción para considerar la apelación en esta etapa de los procedimientos.

A modo de epílogo reproducimos nuestra expresiones, vertidas en la opinión disidente en *U.P.R. v. Asoc. Pur. Profs. Universitarios,* supra, pág. 424, a los efectos de que:

> ... [L]a opinión del Tribunal pasa por alto el texto claro de nuestra Ley, el mandato de nuestra propia jurisprudencia y la fuerza persuasiva de la doctrina en la jurisdicción federal. Al concluir que en estas circunstancias tenemos autoridad para revisar las determinaciones de la Junta, la opinión del Tribunal destruye el delicado esquema que nuestra Asamblea Legislativa diseñó cuidadosamente hace casi cincuenta (50) años con el propósito de proteger a nuestra clase trabajadora de las tácticas dilatorias de los patronos que se oponen a la sindicación de los obreros. Aparte de los posibles méritos que sustantivamente pueda tener la posición de la [parte recurrente], por virtud del claro mandato de nuestra legislación, estamos obligados a abstenernos de revisar las conclusiones de la Junta. (Escolio omitido.)