EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Plaza Las Américas, Inc.<br><br>    Peticionaria<br><br>            vs.<br><br>Centro de Recaudación de Ingresos Municipales<br><br>    Recurrido | Certiorari<br><br>2008 TSPR 37<br><br>173 DPR \_\_\_\_ |

Número del Caso: CC-2006-282


Fecha: 28 de febrero de 2008


Tribunal de Apelaciones:

        Región Judicial de San Juan – Panel II


Panel integrado por su Presidenta, la Juez Peñagarícano Soler, y los Jueces González Vargas y Ramírez Nazario


Abogados de la Parte Peticionaria:

        Lcdo. José Luis Vilá Pérez
        Lcdo. José R. Lázaro Paoli


Abogado de la Parte Recurrida:

        Lcdo. Edwin Ortiz Pietri


Materia: Impugnación de Imposición Contributiva sobre Propiedad Inmueble


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Plaza Las Américas, Inc.

        Peticionaria

          v.

                                CC-2006-282

Centro de Recaudación de
Ingresos Municipales

        Recurrido

PER CURIAM

San Juan, Puerto Rico, a 28 de febrero de 2008.

      Se nos solicita la revisión de una Resolución emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, que sostuvo que el Centro de Recaudación de Ingresos Municipales, en adelante CRIM, tiene el beneficio del término extendido de sesenta (60) días para presentar un recurso de apelación ante el Tribunal de Apelaciones. Veamos los hechos acaecidos que originan el presente recurso.

I

      El 7 de noviembre de 2005, notificada el 14 de noviembre de 2005, el Tribunal de Primera Instancia,

Sala Superior de San Juan, emitió Sentencia en los casos consolidados <u>Plaza Las Américas, Inc. v. Centro de Recaudación de Ingresos Municipales</u>, civiles números K CO2004-0017(807), K CO2004-0004, K CO2004-0005, K CO 2004-0015, K CO2004-0028, K CO2004-0037 y K CO2005-0010.[1] Sostuvo, entre otras cosas, que los inquilinos de Plaza las Américas, Inc., en adelante Plaza, poseían todos los atributos prácticos de dominio sobre las mejoras efectuadas por ello y eran por lo tanto los únicos responsables del pago de la contribución territorial impuesta sobre las mismas bajo las disposiciones de la *Ley de Contribución Municipal sobre la Propiedad de 199*1", Ley Núm. 83 de Agosto 30, 1991.[2]

Inconformes, el 13 de enero de 2006, el CRIM, presentó en el Tribunal de Apelaciones, *"Apelación"*.[3] <u>Este escrito fue presentado a los sesenta (60) días contados desde la fecha de archivo en autos de la sentencia recurrida</u>.

El 26 de enero de 2006, Plaza, presentó en el Tribunal de Apelaciones, *"Moción Solicitando se Desestime la Apelación por Falta de Jurisdicción"*.[4] Alegó, entre otras cosas, que el CRIM venía obligado a radicar la apelación no más tarde de treinta (30) días contados desde la fecha de archivo en autos copia de notificación de

---

[1] Apéndice del recurso de *Certiorari*, págs. 180-185.

[2] 21 L.P.R.A. sec. 5001, *et seq.*

[3] Apéndice del recurso de *Certiorari*, págs. 14-185.

[4] *Íd.*, págs. 11-13.

sentencia. Sostuvieron, entre otras, que el CRIM no era una de las agencias gubernamentales favorecidas por la extensión del término a sesenta (60) días ya que no era una instrumentalidad del Estado Libre Asociado, en adelante el Estado, o un municipio de Puerto Rico. Solicitaron que se desestimara la Apelación por falta de jurisdicción.

El 16 de febrero de 2006, el CRIM, presentó en el Tribunal de Apelaciones, *"Moción en Oposición a que se Desestime la Apelación por Falta de Jurisdicción"*.[5] Alegó, entre otras cosas, que el CRIM representaba el poder soberano del Estado para imponer y cobrar contribuciones. Arguyeron, además, que el CRIM era una agencia o instrumentalidad del Estado que le aplicaba el término de sesenta (60) días para radicar los recursos de apelación dispuestos por el Reglamento del Tribunal de Apelaciones. Solicitaron que el Tribunal no diera paso a la solicitud de desestimación por falta de jurisdicción.

El 22 de febrero de 2006, el Tribunal de Apelaciones emitió *"Resolución"*.[6] Sostuvo, entre otras cosas, lo siguiente:

> La naturaleza de las funciones que presta el CRIM, la cual consiste esencialmente del cobro de contribuciones territoriales, lo cual a su vez es un atributo tradicional del rol del Estado, amerita que esta entidad sea tratada como una agencia a los fines de las Regla 13(A) del Reglamento del

---

[5] *Íd.*, págs. 4-8.

[6] *Íd.*, págs. 2-3.

Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B R 13(A) y la Regla 53.1(c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 53.1 (c). En su consecuencia, el CRIM cuenta con un término de sesenta (60) días para presentar apelación ante este Tribunal.

Insatisfecha, Plaza, acude ante nos mediante recurso de *Certiorari*, alegando la comisión del error siguiente:

**ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMINAR QUE EL CRIM "AMERITA" SER TRATADA COMO UNA AGENCIA DEL GOBIERNO A LOS FINES DE LA REGLA 13A DEL REGLAMENTO DEL TRIBUNAL DE APELACIONES Y LA REGLA 53.1(C) DE LAS DE PROCEDIMIENTO CIVIL VIGENTES. LAS AGENCIAS DEL GOBIERNO QUE CUENTAN CON 60 DIAS PARA RADICAR UNA APELACION ANTE EL TRIBUNAL DE APELACIONES ESTÁN CLARAMANTE DEFINIDAS EN DICHAS REGLAS Y EL CRIM NO ES ALGUNA DE ÉSTAS. NO ES ASUNTO DE MÉRITO, SINO DE DESIGNACIÓN.**

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver los asuntos traídos ante nuestra consideración. Veamos.

II

A

La Regla 53.1(c) de las de Procedimiento Civil[7], en adelante Regla 53.1(c), dispone lo siguiente:

*(c) Términos para presentar el escrito de apelación.* El recurso de apelación deberá ser presentado en la forma antes dispuesta, dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. Si la fecha de archivo en autos de copia de la notificación de

_____

[7] 32 L.P.R.A. Ap. III, R. 53.1 (c).

la sentencia, es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

**En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación publica, o los municipios de Puerto Rico sean parte en un pleito, el recurso de apelación se formalizará por cualquier parte en el pleito perjudicada por la sentencia, presentando un escrito de apelación en la forma antes dispuesta y dentro del término jurisdiccional de sesenta (60) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.** Si la fecha de archivo en autos de copia de la notificación de la sentencia, es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. (Énfasis suplido)

La Regla 13(A) del Tribunal de Apelaciones[8], en adelante Regla 13(A), dispone lo siguiente:

(A) Presentación de apelación

Las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.

**En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación**

---

[8] 4 L.P.R.A. Ap. XXII-B R 13(A).

**se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.** Si la fecha de archivo en autos de copia de la notificación de la sentencia es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. (Énfasis suplido)

B

La Ley Núm. 80 de 30 de agosto de 1991, según enmendada, en adelante Ley 80, creó el Centro de Recaudación de Ingresos Municipales, en adelante CRIM, como parte de un conjunto de leyes dirigido a ampliar los poderes y las facultades de los municipios.[9]

La Exposición de Motivos de la Ley 80, *supra*, dispone lo siguiente:

A los fines de alcanzar el objetivo antes mencionado, se establece el Centro de Recaudación de Ingresos Municipales con el propósito de que, **en representación de los municipios, y bajo el control de éstos asuma las responsabilidades relativas a la contribución sobre la propiedad que al presente desempeña el Gobierno Central.** (Énfasis suplido)

El Artículo 3, de la Ley 80, *supra*, dispone lo siguiente:

**Se crea una entidad municipal,** independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno del Estado Libre Asociado

---

[9] 21 L.P.R.A. sec. 5801, *et seq.*

denominada "Centro de Recaudación de Ingresos Municipales". **El Centro es la entidad de servicios fiscales, cuya responsabilidad primaria será recaudar; recibir y distribuir los fondos públicos provenientes de las fuentes que se indican en este capítulo que corresponden a los municipios.** (Énfasis suplido)

El CRIM es una entidad independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno.[10] Se creó para recaudar y distribuir los fondos públicos que le corresponden a los municipios de Puerto Rico.[11] La Ley 80, *supra*, transfirió al CRIM todos los poderes, funciones y obligaciones conferidos por ley o reglamento al Departamento de Hacienda en relación a la tasación, notificación de imposición, determinación y cobro de la contribución sobre propiedad.[12]

Según el Artículo 5 de la Ley 80, *supra*, el CRIM es dirigido por una Junta de Gobierno, en adelante Junta, integrada por nueve (9) miembros, de los cuales siete (7) serán alcaldes en representación del resto de los municipios de Puerto Rico, y los restantes dos (2) miembros son el Presidente del Banco Gubernamental de Fomento y el Comisionado de Asuntos Municipales.[13] El Presidente de la Junta de Gobierno del CRIM es escogido de entre los alcaldes

---

[10] C.R.I.M. v. Fed. Central Trabajadores, 142 D.P.R. 968, 974-975 (1997)

[11] *Íd.*

[12] Artículo 23(f) de Ley Núm. 80 del 30 de agosto de 1991.

[13] 21 L.P.R.A. sec. 5804.

miembros de la misma, mediante el voto afirmativo de la mayoría del total de los miembros de la junta.[14] El Director Ejecutivo del CRIM también es nombrado por la Junta.[15]

El Artículo 4(l) de la Ley 80, *supra*, expresa que el CRIM podrá demandar y ser demandado.[16] En otras palabras, tiene personalidad jurídica propia.

El Artículo 10 de la Ley 80, *supra*, expresa que el CRIM será un administrador individual según se definió el término en la ya derogada *"Ley de Personal del Servicio Público"*, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301, *et seq.*[17] Se indica, además, que los funcionarios y empleados del CRIM tienen derecho a acogerse a los beneficios de la *"Ley del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidad"*, Ley Núm. 447 del 15 de mayo de 1951, según enmendada, 3 L.P.R.A. sec. 761, *et seq.*[18] De igual forma, los funcionarios y empleados del CRIM están sujetos a la *"Ley de Ética Gubernamental del Estado Libre Asociado"*, Ley Núm. 12 del 24 de julio de 1985, 3 L.P.R.A. sec. 1801, *et seq.*[19] Sobre estos particulares, en C.R.I.M. v. Fed. Central Trabajadores, *supra*, sostuvimos lo siguiente:

---

[14] 21 L.P.R.A. sec. 5805.

[15] 21 L.P.R.A. sec. 5807.

[16] 21 L.P.R.A. sec. 5803(l)

[17] 21 L.P.R.A. sec. 5809.

[18] *Íd.*

[19] *Íd.*

Reiteramos que la reglamentación de las condiciones de trabajo del empleado público es un *factor importante* en la determinación de si tal empleado tiene derecho constitucional a la negociación colectiva. Si no está protegido por la Ley de Personal del Servicio Público de Puerto Rico, o por algún otro régimen análogo de servicio civil, su carácter como trabajador se asemeja al de las empresas privadas y, por lo tanto, existiría un fundamento significativo a favor de su derecho a la negociación colectiva. *J.R.T. v. Corp. del Conserv. Música P.R.*, supra.

Según queda señalado, el C.R.I.M., como administrador individual, está integrado al sistema de personal del Gobierno y sus empleados están protegidos por las garantías de la Ley de Personal del Servicio Público de Puerto Rico. **En este respecto, la situación del C.R.I.M. se asemeja a una agencia gubernamental típica**. Véase J.R.T. v. Corp. del Coserv. Música P.R., supra. (Énfasis suplido)

Sobre la autonomía fiscal del CRIM, en <u>C.R.I.M. v.</u> <u>Fed. Central Trabajadores</u>, *supra*, sostuvimos lo siguiente:

Contrario al criterio de la Junta, concluimos que, en realidad, el C.R.I.M. *no tiene verdadera autonomía fiscal* debido a una incapacidad de facto para generar sus propios fondos. *J.R.T. v. Corp. del Conserv. Música P.R.*, supra. Según hemos expuesto, su razón de ser y responsabilidad primaria es recaudar; recibir y distribuir los fondos públicos de los municipios que provengan de las distintas fuentes indicadas en la ley. Art. 16 de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5815.

\* \* \*

Aun así, la Junta concluyó que el C.R.I.M. tiene verdadera autonomía fiscal, toda vez que la ley le autoriza a disponer, controlar y administrar sus fondos operacionales. Al respecto sostuvo que la ley faculta al C.R.I.M.

a decidir el carácter, la necesidad y la forma en que habrá de incurrirse y autorizarse sus gastos. Art.4(n) de la Ley Núm., *supra*, 21 L.P.R.A. sec. 5803(n).

**Esa conclusión es errónea y no guarda relación con la naturaleza real del C.R.I.M. La facultad de aprobar su propio presupuesto para gastos administrativos no implica que tiene la autonomía fiscal que caracteriza a una empresa privada o a aquellas agencias gubernamentales que funcionan como tales.** Al respecto está obligado a "[r]endir al Gobernador de Puerto Rico, a la Asamblea Legislativa y a la Asamblea Municipal de cada municipio, no más tarde del 30 de enero de cada año, un informe anual sobre todas las actividades y logros del centro, acompañado de los informes financieros anuales." Art. 7(h) de la Ley Núm. 80, *supra*, 21 L.P.R.A. sec. 5806(h).

Las facultades y funciones del C.R.I.M. no lo enmarcan dentro de los conceptos "negocio lucrativo" y "beneficio pecuniario", según nuestra interpretación jurisprudencial. *J.R.T. v. Corp. del Coserv. Música P.R.*, supra.

**En *resumen*, tanto por sus fines eminentemente públicos como por su esencial dependencia presupuestaria, el C.R.I.M., como institución, se asemeja a una agencia gubernamental típica.** Véase *J.R.T. v. Corp. del Coserv. Música P.R.*, supra. (Énfasis suplido)

III

Con el trasfondo normativo antes expuesto, pasamos a resolver si erró el Tribunal de Apelaciones al determinar que el CRIM contaba con un término de sesenta (60) días para presentar apelación ante ese Tribunal.

En su *Resolución*, el foro intermedio apelativo declaró no ha lugar una *"Moción Solicitando se Desestime la Apelación por Falta de Jurisdicción"* presentada por Plaza. Estamos de acuerdo. Veamos.

La Regla 53.1(c) y la Regla 13(A) son claras al establecer un término de sesenta (60) días para la revisión de sentencias en aquellos casos en los que el Estado, sus funcionarios, sus instrumentalidades o los municipios sean partes en el pleito. La única excepción a esta norma, es en el caso de las corporaciones públicas, que sólo cuentan con un término de treinta (30) días para solicitar revisión de las sentencias dictadas en los casos que sean partes.

Cuando la letra de la ley es clara no hay espacio para interpretaciones y la voluntad del legislador tiene que ser respetada.[20]

De una simple lectura de la Regla 53.1(c) y la Regla 13(A) se demuestra inequívocamente la claridad y falta de ambigüedad en su contenido con respecto a la extensión del término de sesenta (60) días a todas las partes involucrados en el pleito en cualquier caso en que una instrumentalidad del Gobierno, como el CRIM, sea parte.

El CRIM, por su naturaleza, se asemeja a una agencia o instrumentalidad gubernamental típica. Tan es así, que en el Artículo 2, inciso (e), la Ley 80, *supra*, se define la palabra "Centro" de la manera siguiente:

---

[20] Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991); Pueblo v. Ortega Santiago, 125 D.P.R. 203 (1990); Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964).

Artículo 2.-Definiciones-
…
(e) "Centro" significará la
**entidad pública** creada para
ofrecer servicios fiscales a los
municipios y denominada "Centro de
Recaudación de Ingresos
Municipales". (Énfasis suplido)

De igual manera nos expresamos en <u>C.R.I.M. v. Fed.
Central Trabajadores</u>, *supra*, cuando expresamos lo siguiente:

**<u>En este respecto, la situación del
C.R.I.M. se asemeja a una agencia
gubernamental típica</u>**.      (Énfasis
suplido)

En el pasado ya hemos sostenido que el CRIM no se
asemeja a una empresa privada, ya que como administrador
individual, estaba integrado al sistema de personal del
Gobierno y sus empleados estaban protegidos por las garantías
de la Ley de Personal de Servicio Público de Puerto Rico.[21]
También sostuvimos que el CRIM no tiene verdadera autonomía
fiscal debido a su incapacidad para generar sus propios
fondos.[22]

La Ley 80, *supra*, define al CRIM como una entidad
municipal, que en representación de los municipios, y bajo el
control de éstos, va a estar a cargo de recaudar; recibir y
distribuir los fondos públicos que corresponden a los
municipios de Puerto Rico.  Es dirigido por una Junta de
Gobierno compuesta por funcionarios públicos.  Su Presidente
es un alcalde.  Sus empleados tienen derecho a acogerse a los
beneficios de la *"Ley del Sistema de Retiro de los Empleados*

[21] <u>C.R.I.M. v. Fed. Central Trabajadores</u>, *supra*.

[22] *Íd*.

*del Gobierno de Puerto Rico*", *supra*, y están sujetos a la "*Ley de Ética Gubernamental del Estados Libre Asociado de Puerto Rico*", *supra*.

Es importante señalar que el que una instrumentalidad, como el CRIM, tenga personalidad jurídica propia no desvirtúa su naturaleza de entidad pública.  En El Vocero v. Junta de Planificación, 121 D.P.R. 115, 122 (1988), expresamos lo siguiente:

> Resumiendo, la Junta es una instrumentalidad, aunque no una corporación pública, del Estado. **La facultad concedida en su ley orgánica de comparecer a los tribunales mediante sus propios abogados no desvirtúa su naturaleza de agencia pública.  Por ello le beneficia el término de sesenta (60) días para recurrir ante nos, ya que sea que esté representada por el Procurador General o por sus propios abogados.** (Énfasis suplido)

En resumen, las características y la naturaleza de las funciones que presta el CRIM, amerita que esta entidad sea tratada como una instrumentalidad del Estado a los fines de la Regla 13(A) del Reglamento del Tribunal de Apelaciones, *supra*, y la Regla 53.1(c) de las de Procedimiento Civil, *supra*.  Resolvemos que el CRIM cuenta con un término de sesenta (60) días para acudir en apelación ante el Tribunal de Apelaciones.

Por consiguientemente, tomando en consideración que la Sentencia del Tribunal de Primera Instancia fue notificada el 14 de noviembre de 2005, y el CRIM presentó ante el Tribunal de Apelaciones su "*Apelación*" el 13 de enero de 2006, dentro

del término jurisdiccional de sesenta (60) días, resolvemos que el foro intermedio apelativo tenía jurisdicción para atender dicho recurso apelativo.


IV

Por los fundamentos antes expuestos confirmamos la sentencia recurrida.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Plaza Las Américas, Inc.

      Peticionaria

          v.                          CC-2006-282

Centro de Recaudación de Ingresos Municipales

      Recurrido


SENTENCIA


San Juan, Puerto Rico, a 28 de febrero de 2008.

      Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, confirmamos la sentencia recurrida.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


                        Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo