Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de San Juan<br><br>    Demandantes Recurrida<br><br>          v.<br><br>Centro de Recaudación de<br>Ingresos Municipales<br><br>    Demandados Peticionarios | Certiorari<br><br>2010 TSPR 14<br><br>178 DPR \_\_\_\_ |

Número del Caso: CC-2007-21

Fecha: 3 de febrero de 2010

Tribunal de Apelaciones:

        Región Judicial de San Juan Panel IV

Juez Ponente:

        Hon. Nestor Aponte Hernández

Abogados de la Parte Peticionaria:

        Lcdo. José A. Acosta Grubb
        Lcda. Luz Nereida Carrero Muñíz
        Lcdo. Ignacio J. Gorrín Maldonado

Abogados de la Parte Recurrida:

        Lcdo. Eric Ronda del Toro

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del pr oceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio p úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

    Demandantes Recurridos

           v.

Centro de Recaudación de       CC-2007-21
Ingresos Municipales

    Demandados Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR RIVERA PÉREZ.

San Juan, Puerto Rico, a 3 de febrero de 2010.

El Centro de Recaudación de Ingresos Municipales, en adelante el C.R.I.M., nos solicita que revisemos una Sentencia emitida por el Tribunal de Apelaciones. El foro apelativo intermedio dictaminó que el C.R.I.M. le violó las garantías del debido proceso de ley al Municipio de San Juan, en adelante el Municipio. Ello, por entender que la actuación del C.R.I.M. de no concederle al Municipio una vista adjudicativa formal para dilucidar los estimados de ingresos, remesas y liquidaciones finales fue una irrazonable y constitutiva de abuso de discreción.

Analicemos los hechos y el trámite procesal que originaron la presente controversia.

I

El 24 de julio de 2002, el Municipio presentó ante el Tribunal de Primera Instancia una demanda en contra del C.R.I.M. para que se emitiera una sentencia declaratoria y un interdicto preliminar y permanente. El Municipio alegó que el C.R.I.M., unilateralmente, fijó el estimado anual de los ingresos correspondientes al Municipio. Por ello, el C.R.I.M. le reclamó al Municipio el rembolso de unos pagos, supuestamente, hechos en exceso en las remesas adelantadas para los años fiscales 1998-1999 y 1999-2000. El C.R.I.M. alegó que la cantidad adeudada por concepto de los pagos adelantados suman la cantidad global de $27,456,900.87. El Municipio alegó que el C.R.I.M. nunca presentó prueba fehaciente sobre como realizó los cálculos matemáticos para llegar a la referida suma monetaria, según lo requiere su Ley Orgánica.[1]

El Municipio arguyó que para el C.R.I.M. poder recuperar las supuestas cuantías pagadas en exceso, la cuantía reclamada debía de evidenciarse mediante la presentación de una auditoría y certificación externa. De igual forma, alegó que las objeciones de los municipios sobre el cobro de los recaudos en exceso debían de

_____

[1] 21 L.P.R.A. § 5808(i),(q),(v).

efectuarse dentro de un procedimiento administrativo adjudicativo y de carácter formal.

El Municipio adujo que se le viola la garantía constitucional a un debido proceso de ley cuando el C.R.I.M. exige el cobro de remesas sin ofrecerle una vista administrativa adjudicativa y formal. Fundamentó la alegación anterior en que el C.R.I.M. carecía de un reglamento que definiera el alcance y estableciera los criterios para determinar las remesas mensuales, ingresos y las liquidaciones parciales y finales para adjudicar las controversias que surgen en tales procesos.[2]

El Municipio argumentó que el C.R.I.M. está sujeto a las disposiciones de la Ley de Procedimiento Administrativo Uniforme, en adelante la L.P.A.U..[3] Por ello, según el Municipio, las actuaciones del C.R.I.M. son contrarias al mandato legislativo. El Municipio teorizó que la retención de $2,288,075.10 realizada por el C.R.I.M. en julio de 2002 fue una ilegítima. Expuso que el daño sufrido por la retención era irreparable. Ello, por afectar directa y sustancialmente las arcas municipales, menoscabando así la capacidad de prestar servicios esenciales a los residentes del Municipio y

---

[2] **El 4 de mayo de 2005, el C.R.I.M. aprobó el Reglamento núm. 6968, *Reglamento sobre el Procedimiento Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas*. Por ello, cuando el Municipio entabló la reclamación no existía ningún reglamento sobre el procedimiento adjudicativo disponible para este tipo de controversias.**

[3] 3 L.P.R.A. § 2101 *et seq.*

poniendo en peligro a los empleados municipales debido a que la carencia de recursos económicos podría culminar en la cesantía de empleados.

De otra parte, el C.R.I.M. solicitó la desestimación de la solicitud de interdicto preliminar y permanente. Ello, por entender que el Municipio no presentó los requisitos necesarios para la concesión de tal recurso extraordinario. Alegó que la Asamblea Municipal y el Alcalde de San Juan habían reconocido la deuda y que el C.R.I.M. había actuado dentro de los poderes delegados por su Ley Orgánica.[4] El C.R.I.M. arguyó que no estaba obligado por ningún estatuto a conceder una adjudicación formal sobre este tipo de controversias.

El 5 de diciembre de 2002, el Tribunal de Primera Instancia emitió una Resolución declarando NO HA LUGAR la solicitud de interdicto preliminar y permanente. El foro primario determinó que el Municipio no cumplió con su deber de evidenciar las probabilidades de prevalecer en una adjudicación final.

Sobre las alegaciones del Municipio, de su derecho a un procedimiento administrativo adjudicativo y formal, el Tribunal de Primera Instancia concluyó que al C.R.I.M. no le es de aplicación la L.P.A.U., *supra*. Por ello, el foro primario concluyó que el C.R.I.M. no venía obligado a concederle al Municipio una adjudicación formal para resolver las controversias sobre las remesas y

---

[4] 21 L.P.R.A. § 5801 *et seq*.

liquidaciones finales. El foro primario fundamentó su decisión en que las retenciones efectuadas por el Banco Gubernamental de Fomento para recuperar los excesos en las remesas otorgadas por el C.R.I.M. al Municipio fueron realizadas conforme a Derecho.

Inconforme con tal determinación, el Municipio acudió ante el Tribunal de Apelaciones. El 30 de octubre de 2003, el foro apelativo intermedio revocó la Resolución emitida por el Tribunal de Primera Instancia. El Tribunal de Apelaciones fundamentó su Sentencia en que el C.R.I.M., por su función eminentemente pública y por su dependencia presupuestaria, es una agencia según dispuesto en la L.P.A.U., *supra*. Determinó que quedó probado el interés propietario de los municipios en los recaudos efectuados por el C.R.I.M.. Concluyó que el C.R.I.M. está obligado a ofrecerle a los municipios las garantías del debido proceso de ley estatuidas en la L.P.A.U., *supra*. Por último, el foro apelativo intermedio entendió que el Tribunal de Primera Instancia venía obligado, antes de resolver el interdicto, a analizar si la actuación cuestionada por el Municipio tenía un efecto adverso sobre el interés público, sus residentes y/o servicios. Por todo lo antes expuesto, ordenó la devolución del caso al foro primario para que se volviera

a celebrar una vista sobre el interdicto preliminar y permanente.[5]

Siguiendo el mandato del Tribunal de Apelaciones, el Tribunal de Primera Instancia celebró la vista y determinó que no procedía el interdicto a favor del Municipio. Ello, debido a que el Municipio, alegadamente, no demostró que la retención que realiza el C.R.I.M. en sus remesas mensuales lo afectara económicamente impidiéndole prestar los servicios necesarios a sus residentes así como velar por la calidad y bienestar de vida de estos.

Inconforme con la determinación del Tribunal de Primera Instancia, el Municipio acudió, nuevamente, ante el Tribunal de Apelaciones. El 30 de septiembre de 2004, el foro apelativo intermedio dictó Sentencia confirmando la determinación del foro primario. Ello, por entender que el Municipio no cumplió con los requisitos necesarios para la concesión de un interdicto preliminar y permanente.

Así las cosas, el 4 de mayo de 2005, el C.R.I.M. presentó ante el Departamento de Estado su Reglamento sobre el Proceso Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las

---

[5] **Inconforme, el 10 de diciembre de 2003, el C.R.I.M. presentó una petición de *certiorari* ante este Tribunal. El C.R.I.M. nos solicitó, en ese entonces, que se revocara la Sentencia emitida por el Tribunal de Apelaciones. El 13 de febrero de 2004, denegamos la expedición del referido recurso.**

Remesas.[6] El 30 de enero de 2006, con la intención de evaluar los reclamos del Municipio correspondientes a las remesas anuales, el C.R.I.M. designó como Oficial Examinadora a la Lcda. Carmen Correa Matos, en adelante la Oficial Examinadora. El Municipio alegó ante la Oficial Examinadora lo siguiente:

A. [Q]ue el C.R.I.M. no posee reglas, reglamentos, normas o conjunto de normas de aplicación general que ejecuten o interpreten la política pública o la ley, relativos a los estimados de ingresos y determinaciones sobre las deudas por pagos en exceso y/o remesas adeudadas a los municipios, que permitan a los municipios conocer y cuestionar el razonamiento seguido por el CRIM. Plantea que se ha utilizado un documento aún en estatus de borrador: *Marco Pragmático y de Procedimiento – Estimados de Ingresos, Remesas Mensuales y Liquidación*.

B. [Q]ue el CRIM formuló arbitrariamente la liquidación final para el 2004-2005 como una deficiencia de $5,833,590, $11,805,037 para 1998-99, y $15,651,864 para 1999-2000. También alegó que, para el 2003-2004, el CRIM dejó de remesar unos $6,000,000, ya que el MSJ estimó sus recaudos para ese año en $153,300,000, mientras que el CRIM informó $147,326,098.

C. [Q]ue el CRIM no proveyó los criterios para la fórmula de equiparación ni los números de la lotería y subsidio por RIN, habiendo gran inconsistencia a través de los años en las cifras reportadas.

D. [Q]ue el CRIM no ha evidenciado las gestiones realizadas para llevar a cabo tasación de las propiedades, así como las realizadas para cobrar contribuciones adeudadas y exigibles. Así mismo, alega que no se han tomado en cuenta los proyectos de mejoras que aumentan el valor de la propiedad y nuevas construcciones que pueden estar sujetas a contribuciones.

---

[6] Reglamento del C.R.I.M., Núm. 6968, *Reglamento sobre el Procedimiento Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas*, de 4 de mayo de 2005.

E. [Q]ue el CRIM ha discriminado contra el MSJ al comparar con el caso del Municipio Autónomo de Ponce, al cual no se le han hecho descuentos para el cobro de su alegada deuda con el CRIM.

F. [Q]ue, para los años 1995-96 al 1999-00, no se han podido presentar datos auditados separados de los estados financieros del CRIM sobre las liquidaciones, en términos de la fuente de los ingresos reconocidos y atribuidos a los municipios correspondientes a dichos años, razón por la cual no se puede corroborar la alegada deficiencia del MSJ con respecto a un exceso de remesas por sobre los recaudos finales plasmados en la liquidación final.[7]

El 15 de mayo de 2006, luego de ponderada la prueba documental, la Oficial Examinadora emitió su informe. Determinó que las actuaciones del C.R.I.M. no fueron arbitrarias y que el C.R.I.M. había cumplido con proveerle la información y los documentos necesarios al Municipio. Por ello, entendió que el Municipio estaba en posición de revisar las cifras controvertidas. Concluyó que, al menos desde el 2000, los datos reales de los movimientos de la base contributiva atribuibles a los municipios y los desembolsos por los diferentes conceptos estaban disponibles en los reportes, así como en los diferentes informes que preparó el C.R.I.M.. El informe indicó que existía prueba de que las partes, aquí en controversia, se habían reunido en varias ocasiones con el motivo de calcular los ingresos y las liquidaciones finales.

---

[7] *Véase*, Informe del Oficial Examinador, en las págs. 927-928 del Apéndice.

Respecto a la alegación del Municipio sobre la inconsistencia en la partida correspondiente al subsidio por rentas internas netas del Fondo General, en adelante el R.I.N., y en el de la lotería, el informe señaló que los cálculos matemáticos dispuestos en la Ley Orgánica del C.R.I.M., *supra*, pueden crear diferencias en la aportación del subsidio R.I.N. y en la lotería cuando los recaudos difieren de los ingresos municipales proyectados. A su vez, el informe indica que el Municipio no presentó alegación sobre cuál debería ser la fórmula matemática para determinar la cuantía de la liquidación final, según dispone el Reglamento 6968, *supra*. Ello, a pesar de que para los años fiscales 1998-1999 y 1999-2000 el Municipio, según concluye el informe, no tuvo la oportunidad de verificar los ingresos atribuidos. Lo anterior, según expresa el informe de la Oficial Examinadora, se debió a que la información no estaba disponible para la fecha en que el Municipio instó su reclamación por vez primera. Por ello, la Oficial Examinadora aceptó como correctas las liquidaciones realizadas por el C.R.I.M. para los referidos años fiscales.

El 19 de junio de 2006, el Director Ejecutivo del C.R.I.M emitió la Resolución final acogiendo, en su totalidad, las recomendaciones contenidas en el informe de la Oficial Examinadora. En suma, la Resolución estableció que el Municipio tiene una obligación respecto

al pago de la supuesta deuda por los recaudos correspondientes a las remesas de los años fiscales 1998-1999 y 1999-2000 por la cantidad global de $27,456,900.87 y una deficiencia para el año fiscal 2004-2005 por la suma total de $5,833,589. Ante este cuadro fáctico, el Municipio presentó una moción de reconsideración, la cual fue declarada NO HA LUGAR.

Inconforme con dicha determinación, el Municipio presentó ante el Tribunal de Apelaciones un recurso de revisión judicial de decisiones administrativas. El Municipio alegó que el C.R.I.M. cometió los señalamientos de error siguientes:

> Erró el Centro de Recaudación de Ingresos Municipales al determinar que había explicado con pruebas suficientes, los cálculos que realizó y las gestiones que hizo, para decidir las liquidaciones finales del Municipio de San Juan, de los años aquí en controversia.

> Erró el Centro de Recaudación de Ingresos Municipales al no permitir descubrimiento de prueba ni desfile de prueba testifical ante el examinador que designó para atender el proceso y con ello violó el debido proceso de ley al Municipio de San Juan aquí recurrente.

El 22 de diciembre de 2006, el Tribunal de Apelaciones emitió una Sentencia en la cual determinó, en síntesis, lo siguiente:

> Dadas las particularidades del presente caso era conveniente, a fin de garantizar a todas las partes el cumplimiento de las garantías del debido proceso de ley, que se celebrara una vista en la cual el Municipio, parte directa y adversamente afectada por el procedimiento, tuviera la oportunidad de presentar evidencia y contrainterrogar los testigos. Por ello, concluimos que no se cumplió con las garantías

del debido procedimiento de ley, consagradas en la LPAU. Adviértase que se impugna el cómputo de las liquidaciones anuales de las remesas en controversia, por lo que la actuación por parte del CRIM de no celebrar una vista administrativa luego de que la misma fue solicitada por el recurrente, fue irrazonable y constituyó un abuso de discreción. En conclusión procede que la agencia celebre una vista en la que se le provean al recurrente todas las garantías procesales a (sic) que hemos hecho alusión.

Inconforme con el dictamen emitido por el Tribunal de Apelaciones, el C.R.I.M. acude ante nos alegando que el foro apelativo intermedio cometió los señalamientos de error siguientes:

**Erró el honorable Tribunal de Apelaciones al resolver que el C.R.I.M. actuó de manera irrazonable al no celebrar una vista evidenciaria en el presente caso y que ello constituyó abuso de discreción, aún cuando de su propia Sentencia dicho foro recurrido reconoció que la L.P.A.U. no requiere la celebración de una audiencia como parte de las garantías del debido proceso de ley que cobija a las partes en un procedimiento administrativo, así como tampoco lo requiere la Ley Orgánica del C.R.I.M. ni su Reglamento Administrativo.**

**Erró el Honorable Tribunal de Apelaciones al concluir que el C.R.I.M. emitió una Resolución sin haber citado a las partes afectadas ni darles la oportunidad de ser oídas y al concluir, por tanto, que el C.R.I.M. no recibió ni consideró los argumentos y la prueba que pudo haber aportado el Municipio de San Juan, lo cual es contrario a lo que claramente surge del expediente administrativo y del Informe sometido por la Oficial Examinadora.**

**Erró el Honorable Tribunal de Apelaciones al concluir que resulta "conveniente" la celebración de una vista evidenciaria debido a las "particularidades del presente caso" ya que tal determinación, además de no estar sustentada en derecho, le resta uniformidad al proceso administrativo que el C.R.I.M. le**

**ofrece a los municipios para impugnar las liquidaciones finales, lo que constituye un precedente nefasto para el buen y sano funcionamiento del C.R.I.M. y los municipios a los cuales les sirve.**

II

Antes de comenzar la discusión de los señalamientos de error, es importante analizar si el C.R.I.M. es una "agencia" sujeta al cumplimiento de las disposiciones de la L.P.A.U.. Concluimos que sí. Veamos.

En aras de hacer posible la autonomía de los municipios se creó el C.R.I.M.. Fue creado como una "entidad de los municipios" independiente y separada de cualquier agencia o instrumentalidad del Estado, con el fin ulterior de otorgarle a los municipios más control sobre la recaudación de las contribuciones sobre la propiedad,[8] evitando que el gobierno central controlara indebidamente la autoridad y el proceso fiscal de los municipios.[9] El Artículo 3 de la Ley Orgánica del C.R.I.M., *supra*, dispone, expresamente, que el C.R.I.M. estará sujeto a las disposiciones de la L.P.A.U., *supra*.[10]

Las facultades y funciones del C.R.I.M. tradicionalmente han correspondido al Estado como lo son todas las relacionadas con la recaudación de impuestos. Tales funciones coinciden con la disposición de la

---

[8] 21 L.P.R.A. § 5803(b); *C.R.I.M. v. Federación Central de Trabajadores*, 142 D.P.R. 968 (1997).

[9] 21 L.P.R.A. § 5801 *et seq*.

[10] 21 L.P.R.A. § 5802.

L.P.A.U. que define el término "agencia" sujeta a la aplicación de las disposiciones del referido estatuto.[11] Concluimos que el C.R.I.M., como institución, es una "agencia gubernamental", tanto por su finalidad eminentemente pública como por la esencial dependencia de los municipios en el ámbito presupuestario.[12]

III

Resuelto que el C.R.I.M. es una agencia sujeta al cumplimiento de las disposiciones de la L.P.A.U., *supra*, y por estar los señalamientos de error íntimamente relacionados entre sí procederemos a discutirlos en conjunto.

En el ejercicio de la revisión judicial de decisiones administrativas los tribunales deben de concederle deferencia a las resoluciones emitidas por las agencias administrativas. La deferencia se les concede en reconocimiento de la experiencia y de la especialidad de las agencias en las áreas reguladas por estas.[13] Por ello, se establece una presunción de corrección hacia las determinaciones de las agencias administrativas. Lo

---

[11] 3 L.P.R.A. § 2102.

[12] *J.R.T. v. Corp. del Conserv. Música P.R.*, 140 D.P.R. 407 (1996).

[13] *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116, 122 (2000); *Assoc. Ins. Agencies v. Comisionado de Seguros*, 144 D.P.R. 425, 436 (1997); *Misión Industrial v. Junta de Planificación*, 142 D.P.R. 656, 672-73 (1997); *Metropolitana S.E. v. A.R.Pe.*, 138 D.P.R. 200, 213 (1995).

expuesto, demuestra que la revisión judicial de una decisión administrativa es limitada. Por tal razón, hemos expresado que los tribunales deben de limitarse a determinar si la actuación de la agencia es una **arbitraria, caprichosa, ilegal o que por ser tan irrazonable constituye un abuso de discreción.**[14]

A pesar de lo antes expuesto, tal deferencia sucumbe cuando las actuaciones administrativas menoscaban derechos fundamentales, o las mismas son irrazonables.[15] **Una actuación administrativa que afecte negativamente el interés público es considerada como una actuación irrazonable, constitutiva de abuso de discreción.** Ello, por ser contrario a los principios creadores de las agencias administrativas, entiéndase promover la política pública del País a favor del bienestar e interés público.

No obstante el reconocimiento de nuestra limitación **deferencial,** el poder discrecional de las agencias es limitado. Una forma de evitar que las agencias administrativas actúen de manera arbitraria o injusta es especificando de forma precisa mediante reglamentos los poderes y deberes delegados de forma general por la legislación correspondiente. En adición, las agencias

---

[14] *Cruz v. Administración de Corrección*, 164 D.P.R. 341 (2005); *Mun. de San Juan v. Junta de Calidad Ambiental*, 149 D.P.R. 263, 280 (1999).

[15] *Castillo Camacho v. Depto. del Trabajo*, 152 D.P.R. 91 (2000); *Costa Wood v. Caguas Expressway Motors*, 149 D.P.R. 881 (1999); *Reyes Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85 (1997); *Murphy v. Bernabé v. Tribunal Superior*, 103 D.P.R. 692 (1975).

administrativas vienen obligadas a proveer guías adecuadas para que las personas naturales o jurídicas que se vean afectadas por una actuación administrativa puedan estar debidamente informadas sobre el estado de derecho vigente.[16]

IV

¿El procedimiento administrativo de tipo adjudicativo brindado al Municipio por el C.R.I.M. cumplió con las disposiciones de la L.P.A.U., *supra*? Nos es forzoso contestar tal interrogante en la negativa. Veamos.

La Sección 2158 de la L.P.A.U. dispone lo siguiente:

(a) Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. **No obstante lo anteriormente dispuesto, en los reglamentos de la agencia se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.**
(b) **Podrá, además, emitir citaciones para la comparecencia de testigos; órdenes para la producción de documentos, materiales u otros objetos; y órdenes protectoras, conforme a las Reglas de Procedimiento Civil.**[17]

**La letra de la referida disposición de la L.P.A.U., *supra*, es clara. Cuando una agencia sea la que entable el procedimiento adjudicativo, además de estar obligada a otorgar un descubrimiento de prueba, también tendrá que**

---

[16] *Asociación de Farmacias v. Depto. de Salud*, 156 D.P.R. 105 (2002).

[17] 3 L.P.R.A. § 2158 (a),(b). (Letras en negrillas, énfasis nuestro).

**conceder una vista adjudicativa evidenciaria formal**. Por ello, el inciso (b) de la referida Sección provee para la citación de testigos, producción de documentos e incluso hace una invitación a cumplir con lo dispuesto en las Reglas de Procedimiento Civil.[18] Resulta obvio que el propósito de la referida disposición de la L.P.A.U., *supra*, es no sólo otorgar un descubrimiento de prueba, sino que da derecho a una vista adjudicativa evidenciaria de carácter formal.

No tenemos duda alguna que los ingresos de los municipios que recolecta el C.R.I.M. en representación e interés de los mismos están revestidos de un **interés gubernamental legítimo** que va a la médula de la fórmula representativa que instrumenta la vida democrática de los ciudadanos que viven en el Municipio y que obliga a los oficiales electos por ellos en la esfera municipal a prestarle ciertos y determinados servicios. Con esos ingresos se ofrecen tales servicios a esos ciudadanos que eligieron a sus oficiales municipales con ese propósito.

En lo referente a las remesas mensuales y liquidaciones finales, el C.R.I.M. actúa al amparo de un mandato específico de su Ley Orgánica, *supra*. Su ministerio incide directamente con un **interés gubernamental legítimo** que afecta la médula de nuestro sistema democrático de gobierno municipal. En la medida en que el C.R.I.M. emite una decisión sobre las cuantías que adeudan los

---

[18] 32 L.P.R.A. Ap. III, R. 1 *et seq*.

municipios o viceversa, dicha determinación incide y afecta la ejecución, y la política pública formulada por el Estado, cuyo interés primordial es brindarle autonomía fiscal a los municipios. Igual efecto tienen las decisiones relacionadas con los estimados de ingresos, recaudación de las contribuciones municipales y de las remesas y liquidaciones parciales o finales correspondientes a los municipios.

Considerando que los municipios tienen un **interés gubernamental legítimo** en los recaudos de los fondos que constituyen sus ingresos, resulta evidente que al resolver controversias en torno a dichos recaudos y aquellas relacionadas con las remesas mensuales y liquidaciones parciales y finales correspondientes, **el C.R.I.M. realiza una adjudicación.**

Una vez trabada una controversia entre un municipio y el C.R.I.M. sobre el estimado de ingresos, remesas mensuales y/o liquidaciones parciales o finales ésta debe de resolverse ante la agencia mediante un procedimiento que le brinde al municipio las garantías dispuestas por la Sección 2158 de la L.P.A.U., *supra*.[19] El C.R.I.M. viene obligado a garantizarle al Municipio las garantías necesarias de que el procedimiento será uno justo y equitativo, para prevenir el abuso de discreción

---

[19] 3 L.P.R.A. § 2158; *Rodríguez v. Tribunal Superior*, 104 D.P.R. 336 (1975), citando a *Fuentes v. Sherwin*, 407 U.S. 07 (1972) y *Amstrong v. Manso*, 380 U.S. 545 (1965).

administrativa.[20] No albergamos duda alguna de que en el presente caso el C.R.I.M. venía obligado a celebrar una vista adversativa, adjudicativa y formal de naturaleza evidenciaria, atendidas las circunstancias particulares presentes. **El resultado de un abuso de discreción administrativa de la agencia afectaría y podría hasta perjudicar al beneficiario de la fórmula democrática o sea al ciudadano que recibe los servicios que ofrece el municipio a través de los oficiales electos por el voto directo de ellos.**

Concluimos que el procedimiento de recobro, iniciado por el C.R.I.M., que produjo en el Municipio una deficiencia presupuestaria de tal naturaleza que le ocasionó un disloque en sus arcas al punto que lo obligó a tomar dinero a préstamo al Banco Gubernamental de Fomento para lidiar con tal situación es uno de naturaleza adjudicativa formal, **por existir una controversia fáctica**. En esos casos el C.R.I.M. tiene que cumplir con la Sección 2158 de la L.P.A.U., *supra*. Nada impide que el C.R.I.M. pueda adjudicar sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expediente señale **claramente** la corrección de la determinación de la agencia. Ese no es el caso ante nos.

---

[20] *Supra*, n. 21.

El C.R.I.M. **se negó a conceder la solicitud de descubrimiento de prueba realizada por el Municipio contraviniendo directamente lo dispuesto en la Sección 2158 de la L.P.A.U.,** *supra*. Nuevamente, la referida Sección de la L.P.A.U., *supra*, dispone que, "[l]os procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo". Tal situación no ocurrió en el caso de marras. **Las agencias administrativas garantizarán a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido** *motu propio* **por la agencia administrativa. Además, se podrán emitir citaciones para requerir la comparecencia de testigos; órdenes para la producción de documentos u otros objetos y órdenes protectoras conforme a las Reglas de Procedimiento Civil.**[21]

En el presente caso, **el C.R.I.M. inició el procedimiento** para recobrarle al Municipio los adelantos de ingresos, alegadamente, indebidos realizados durante los años fiscales 1998—1999 y 1999-2000 por la suma global de $27,456,900.83. Para ello, comenzó en julio de 2002 a descontar la suma de $2,888,075.10 de la remesa

---

[21] 3 L.P.R.A. sec. 2158(a),(b).

mensual del Municipio para abonar a la alegada deuda. Tal acción del C.R.I.M. produjo que el Municipio se viera obligado a tomar un empréstito del Banco Gubernamental de Fomento, autorizado por la Ley Orgánica del C.R.I.M., *supra*, para financiar el resultado de la acción del C.R.I.M..[22]

La acción iniciada por el C.R.I.M. es una *ultra vires* por ser contraria a la L.P.A.U., *supra*. En adición, el C.R.I.M. no evidenció cómo calculó la deuda. Por ello, el Municipio procedió a solicitar como remedio el pago de la suma total de $33,456,900,87. Solicitó, descubrir prueba relacionada con los criterios y métodos utilizados para calcular los ingresos municipales. **Requirió acceso al sistema de almacenamiento de datos del C.R.I.M. y a las personas con el conocimiento sobre la información relevante a la controversia.** Apoyó su solicitud en las conclusiones de un informe de auditoría realizada en el 2001 a los efectos de que no era posible identificar el flujo de las fuentes de los ingresos determinados por el C.R.I.M. para los años fiscales 1998-1999 y 1999-2000. Todo ello, con el fin de corroborar la corrección del cálculo realizado por esa agencia sobre los ingresos del Municipio para esos años fiscales. Solicitó, además, la celebración de una vista evidenciaria.

El C.R.I.M. no cumplió con lo requerido por el Municipio. Alegó que la información suministrada al

---

[22] 21 L.P.R.A. § 5821-5831.

Municipio con anterioridad al inicio del procedimiento administrativo era suficiente para **"litigar la controversia"**. El C.R.I.M. entendió que tal procedimiento alcanzaba los fines de la justicia y no resultaba necesario autorizar un descubrimiento de prueba sobre lo solicitado por el Municipio ni la celebración de una vista evidenciaria. **No tiene razón.**

El C.R.I.M. reconoció que el informe de auditoría de 2001 no pudo identificar un flujo de la fuente de ingresos para los años fiscales 1998-1999 y 1999-2000. El C.R.I.M., simplemente, puntualizó que de su Ley Orgánica, *supra*, surgen los cálculos de las remesas.

La L.P.A.U., *supra*, reconoce el derecho del Municipio para la celebración de una vista evidenciaria para dilucidar una controversia como la presente.[23] Con ello se promueve el que el procedimiento adjudicativo sea uno justo y equitativo. Los detalles que obran en el expediente sobre las liquidaciones finales para todos los años fiscales en controversia **no demuestran una fórmula clara para calcular las remesas y liquidaciones finales.** El que el C.R.I.M. le brindara acceso al Municipio a los informes de las auditorías realizadas de las liquidaciones finales de las remesas **no eliminó la controversia de hechos existente en el caso ante nos.**

Por ello, no se nos ha colocado en posición de concluir que el C.R.I.M. suministró la descripción del método y

---

[23] 3 L.P.R.A. § 2158 (a),(b).

los parámetros utilizados por esa agencia al realizar el estimado de ingresos del Municipio. Tampoco consideramos como el umbral de la presente controversia el que las determinaciones sobre ingresos, incluyendo la liquidación anual del Municipio, en su momento, fueron auditados por una firma externa del C.R.I.M.. Máxime, cuando para los años 1998-1999 y 1999-2000 el C.R.I.M. no tenía la obligación de realizar una auditoría independiente de las liquidaciones finales a los municipios. Para lograr una adjudicación justa y equitativa en la presente controversia, es necesario que se le brinde al Municipio la oportunidad de descubrir prueba y la celebración de una vista evidenciaria. Ello, para poder estar en posición de ofrecer prueba de la misma naturaleza, atendiendo las circunstancias particulares del presente caso.

**Nos impacta profundamente la imprecisión y el cúmulo de incorrecciones que se desprende del expediente judicial presentado por el C.R.I.M..[24] En específico, al estimar**

---

[24] **En el índice del apéndice del presente recurso surge que el aquí peticionario, el C.R.I.M., incluyó en su apéndice lo siguiente:**

**47.   Documento   del   CRIM   sobre   análisis Valoración Municipio de San Juan**

**48.   Carta del entonces Director de Finanzas del   Municipio   de   San   Juan   al   Director Ejecutivo del CRIM del 11 de junio de 2002**

**49. Carta del Director Ejecutivo del CRIM al entonces Director de Finanzas del Municipio de San Juan de 2 de junio de 2002**

**los ingresos del Municipio y al calcular las remesas mensuales que le corresponden. Ello ha provocado que el Municipio tenga que acogerse a préstamos para cubrir sus obligaciones, las cuales incluyen la prestación de servicios a la ciudadanía.**

No podemos concluir sin antes expresar nuestra sorpresa y preocupación por la forma distinta en que el C.R.I.M. atendió y tramitó la situación del Municipio de Ponce, la cual era esencialmente igual a la del Municipio de San Juan. No observamos una uniformidad en tales procedimientos. Por ello, la alegación del C.R.I.M. sobre la necesidad de mantener uniformidad en los procedimientos administrativos es inmeritoria. El cumplir con las disposiciones estatutarias de la L.P.A.U., *supra*, y con lo aquí pautado, sí le garantiza a los municipios y a la agencia uniformidad e igualdad en los procedimientos administrativos. La diferencia entre ambos procedimientos marca un efecto y un resultado distinto en las arcas y el

---

**50. Análisis Ingresos Incluidos en las liquidaciones Revisadas, Municipio de San Juan, años fiscales 1996-97 a 2001-01**

**51 Carta del Director Ejecutivo del CRIM al Alcalde de San Juan del 31 de mayo de 2002**

**52. Carta del entonces Director de Finanzas del Municipio de San Juan al Director Ejecutivo del CRIM del 25 de junio de 2002**

**No obstante, tales documentos no se encuentran en el apéndice del recurso ante nos. Los títulos que aparecen en el índice sugieren que contienen información relacionada con la controversia de autos. Página 3 del índice del apéndice del presente recurso.**

presupuesto de cada municipio, colocando mayor peso en uno que en otro afectando directamente la cantidad y calidad del servicio que estos podrían brindarles a la ciudadanía que le sirven. **Impacta nuestra conciencia tal actuación**.

V

Por todo lo antes expuesto, confirmamos la Sentencia emitida por el Tribunal de Apelaciones. Devolvemos la controversia de autos al C.R.I.M. para que le conceda al Municipio de San Juan un procedimiento adjudicativo formal con todas las garantías a las que tiene derecho a tenor con lo aquí pautado.

*Efraín E. Rivera Pérez*
*Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

    Demandantes Recurridos

           v.                  CC-2007-21

Centro de Recaudación de
Ingresos Municipales

    Demandados Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 3 de febrero de 2010.

      Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte integra de la presente, confirmamos la Sentencia emitida por el Tribunal de Apelaciones. Devolvemos la controversia de autos al C.R.I.M. para que le conceda al Municipio de San Juan un procedimiento adjudicativo formal con todas las garantías a las que tiene derecho a tenor con lo aquí pautado.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez disiente con opinión escrita a la cual se une el Juez Presidente señor Hernández Denton. La Jueza Asociada señora Fiol Matta no intervino.

                Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de San Juan

    Recurrida

       v.

Centro de Recaudaciones de               CC-2007-21
Ingresos Municipales

    Peticionaria

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se le une el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 3 de febrero de 2010

Disiento del curso de acción seguido por la mayoría en el presente caso por entender que el procedimiento administrativo de impugnación de liquidación final de remesas municipales celebrado por el Centro de Recaudación de Ingresos Municipales a petición del Municipio de San Juan satisfizo las exigencias del debido proceso de ley. Considero además que el criterio mayoritario se ampara en una interpretación acomodaticia de los hechos que suscitan la controversia ante nuestra consideración.

Por lo anterior y toda vez que no considero que los hechos que sirven de trasfondo a esta controversia se encuentren resumidos adecuadamente

en la ponencia mayoritaria, entiendo necesario y pertinente exponer los hechos materiales y procesales en su totalidad, según surgen los mismos de los autos del caso.

I.

El 12 de julio de 2005 el Municipio de San Juan presentó dos recursos de apelación ante el Centro de Recaudación de Ingresos Municipales al amparo del Reglamento sobre el procedimiento adjudicativo disponible a los municipios para cuestionar las liquidaciones finales anuales de las remesas. Reglamento número 6968 del Centro de Recaudación de Ingresos Municipales de 4 de mayo de 2005, en adelante Reglamento número 6968.[25] En el primero de los recursos, el Municipio alegó que el C.R.I.M. le había notificado e intentado cobrar ilegalmente una deuda ascendente a $27,456,900.87 por concepto de remesas adelantadas en exceso durante los años fiscales 1998-99 y 1999-2000. Sostuvo que el C.R.I.M. no había podido evidenciar cómo calculó dicha deuda ni le había brindado el balance de la misma certificado y auditado por contables externos. Alegó que el C.R.I.M. —de forma unilateral y discriminatoria— había comenzado a descontarle en julio de

_____

[25] Cabe señalar que este reglamento fue adoptado por el C.R.I.M. como resultado de la sentencia dictada por el Tribunal de Apelaciones en un pleito judicial instado por el Municipio de San Juan en relación con los mismos hechos que dieron lugar a las apelaciones administrativas aquí reseñadas. El Reglamento número 6968 fue posteriormente enmendado por el Reglamento número 7052 de 15 de noviembre de 2005 con el único fin de aumentar el término jurisdiccional disponible a los municipios para iniciar el procedimiento de impugnación de la liquidación final de sus remesas de quince a sesenta días.

2002 la cantidad de $2,288,075.10 de su remesa mensual para abonar al pago de la deuda en controversia, lo cual conllevó que el Municipio se viera en la obligación de acogerse al préstamo autorizado por la Ley número 42 de 26 de enero de 2000 para financiar la misma. 21 L.P.R.A. secs. 5821-31. El Municipio solicitó que se ordenara al C.R.I.M. saldar el referido empréstito y reembolsarle los intereses por los pagos realizados hasta el momento.

En el segundo de sus recursos, el Municipio de San Juan planteó que el C.R.I.M. había calculado incorrectamente sus ingresos por concepto de contribución sobre la propiedad correspondientes al año fiscal 2003-04. Específicamente, alegó que el C.R.I.M. le adeudaba $6,000,000.00 por dicho concepto y solicitó que se ordenara al C.R.I.M. pagarle dicha cantidad.

Estando ante su consideración dichos asuntos, el C.R.I.M. ordenó la consolidación de ambos recursos y la corrección de varios errores en la presentación de éstos. En cumplimiento de dicha orden, el Municipio de San Juan procedió a presentar sus argumentos en una sola moción en la que solicitó como remedio el pago de una suma total ascendente a $33,456,900.87. Incluyó con su petición la evidencia documental en apoyo a sus contenciones.

En una posterior moción, el Municipio de San Juan solicitó que, una vez nombrado el oficial examinador que atendería el procedimiento, ordenara al C.R.I.M. descubrir prueba relacionada con los criterios y métodos utilizados

para calcular los ingresos municipales. También requirió acceso al sistema de almacenamiento de datos del C.R.I.M. y a las personas con el conocimiento sobre la información relevante a la controversia. Fundamentó esta última solicitud en el hecho de que un informe de auditoría realizado en el año 2001 había concluido que no era posible identificar el flujo de la fuente de ingresos del C.R.I.M. para los años 1998-99 y 1999-2000 con el fin de constatar la corrección del cálculo de los ingresos del Municipio de San Juan para dichos años fiscales. Finalmente, el Municipio solicitó que se ordenara al C.R.I.M. descubrir la prueba solicitada y citar a los funcionarios y ex funcionarios que pudieran informar sobre el proceso de almacenamiento de datos para los años fiscales en controversia. Solicitó además la celebración de una conferencia con antelación a vista y, posteriormente, una "vista evidenciaria".

El C.R.I.M., por su parte, se opuso a la solicitud del Municipio mediante la presentación de su alegato. Arguyó que el Reglamento número 6968, *supra*, no proveía para la aplicación de las Reglas de Procedimiento Civil o de Evidencia salvo en circunstancias en que se estimara necesario para lograr los fines de la justicia. Sostuvo que la información proporcionada al Municipio de San Juan con anterioridad al inicio del procedimiento administrativo y la que el C.R.I.M. produciría en apoyo a sus planteamientos sería suficiente para litigar la

controversia sin la celebración de una vista evidenciaria. Específicamente, el C.R.I.M. adujo que a pesar de que el informe de auditoría de 2001 no hubiera podido identificar el flujo de la fuente de ingresos para los años fiscales 1998-99 y 1999-2000, los estados financieros del C.R.I.M. para dichos años -incluyendo la liquidación final de las remesas municipales- habían sido auditados por una firma de contables externa. Es decir, que en su momento, las liquidaciones finales de remesas fueron auditadas por una firma de contables externa.

En relación con las alegaciones del Municipio de San Juan en torno a sus ingresos para el año fiscal 2003-04, el C.R.I.M. sostuvo que como resultado de los cómputos finales auditados, se le habían remitido al Municipio $2,603,085.23 como complemento a las remesas enviadas para dicho año fiscal. Alegó el C.R.I.M. que toda vez que el Municipio no había presentado prueba fehaciente en apoyo a sus alegaciones de que el cálculo efectuado por el C.R.I.M. de su ingreso anual era incorrecto, procedía la desestimación de las apelaciones presentadas.

Así las cosas, mediante una tercera solicitud de revisión de liquidación final, el Municipio de San Juan impugnó la notificación del C.R.I.M. a los efectos de que éste debía $5,833,589.95 por concepto de remesas enviadas en exceso durante el año fiscal 2004-05. Nuevamente el Municipio alegó que el C.R.I.M. no le había proporcionado la información relativa a la manera de realizar el cálculo

de la deuda ni le había demostrado a qué respondía la disminución de los ingresos del Municipio para dicho año fiscal, en base a los cuales se calcula el monto de sus remesas. Sometió con su solicitud los documentos relacionados con la controversia.

En oposición, el C.R.I.M. alegó que de los propios documentos presentados por el Municipio de San Juan surgía que le había proporcionado a éste toda la información respecto a la liquidación final de la remesa correspondiente al año fiscal 2004-05. Enfatizó que la propia ley habilitadora del C.R.I.M. dispone las fórmulas y procedimientos para el cálculo de las remesas anuales y que el Municipio, contrario al reglamento aplicable, no había detallado el cálculo de la remesa que a su entender era el correcto.

Una vez más el Municipio solicitó que se ordenara al C.R.I.M. proporcionarle los documentos utilizados para el cálculo de la deuda. Pidió además la comparecencia de funcionarios y ex funcionarios encargados del almacenamiento de datos en la dependencia así como la celebración de una vista evidenciaria. El C.R.I.M. se opuso a la moción alegando que la Ley de procedimiento administrativo uniforme, Ley número 170 del 12 de agosto de 1988, 3 L.P.R.A. secs. 2101-2201, no exige la celebración de una vista en todo procedimiento administrativo. Añadió que tampoco procedía la aplicación de las Reglas de Procedimiento Civil ni de Evidencia al procedimiento en

controversia y que toda la información pertinente había sido proporcionada al Municipio según se desprendía de los documentos presentados por este último en apoyo a su solicitud de revisión de liquidación final.

Así las cosas, la oficial examinadora consolidó la última petición de impugnación de liquidación final de remesa del Municipio de San Juan con las anteriores. Además, declaró sin lugar las solicitudes de celebración de vista presentadas por el Municipio. Fundamentó su determinación en que la Ley de procedimiento administrativo uniforme, *supra*, no requiere la celebración de una vista y el Reglamento sobre el procedimiento adjudicativo disponible a los municipios para cuestionar las liquidaciones finales anuales de las remesas, *supra*, tampoco provee para la misma. Enfatizó que el reglamento dispone para la presentación de evidencia documental que deberá acompañarse con la petición del municipio solicitante.

En su resolución, sin embargo, la oficial examinadora se reservó la potestad de solicitar información adicional a las partes de acuerdo con sus prerrogativas. Así en efecto lo hizo mediante una orden emitida el 13 de marzo de 2006 en la que solicitó a ambas partes información adicional sobre la controversia. En lo pertinente al recurso ante nuestra consideración, la oficial examinadora solicitó al C.R.I.M. que detallara el procedimiento para la estimación de los ingresos municipales para los años en controversia,

en base al cual se determinaron las remesas del Municipio de San Juan. También solicitó el detalle del procedimiento empleado por el C.R.I.M. para notificar a los municipios la proyección de dichos ingresos. Además, la oficial examinadora requirió acceso a las auditorías externas realizadas a la liquidación de las remesas en controversia.

Habiendo cumplido el C.R.I.M. con la orden y con el beneficio de los alegatos y la evidencia documental presentada por las partes, la oficial examinadora emitió un informe en el cual concluyó que el C.R.I.M. había actuado correctamente al realizar las liquidaciones finales de las remesas impugnadas por el Municipio. La oficial examinadora determinó que según surgía del expediente, el C.R.I.M. produjo -en el curso de las conversaciones anteriores al inicio del procedimiento administrativo- toda la información solicitada por el Municipio. Dicha entidad además había notificado al Municipio -conforme a la ley- los estimados de ingresos de los años en controversia a base de los cuales se calcula la remesa mensual de los municipios. El examen de estos últimos reveló que fueron preparados correctamente según los parámetros de contabilidad aplicables, en ocasiones incluso reflejando una desviación favorable para los municipios.

La oficial examinadora estableció además que una vez realizado el ejercicio de estimación de ingresos a base de los parámetros establecidos por la Junta de Gobierno del C.R.I.M., el cálculo de las cantidades a ser remesadas a

los municipios es un ejercicio aritmético verificable por terceros. Luego de detallar la manera de hacer el cómputo de dichas remesas según los parámetros contenidos en la ley orgánica del C.R.I.M. y de revisar los estimados de ingresos, los informes de liquidaciones finales y las auditorías realizadas, la oficial examinadora concluyó que las actuaciones del C.R.I.M. no habían sido arbitrarias o caprichosas. Por último, la oficial recomendó al C.R.I.M. adoptar un documento oficial con la fórmula para la estimación de ingresos base para el cálculo de las remesas como mecanismo para disipar las dudas de los municipios en torno al procedimiento.

Cabe señalar que la oficial examinadora aclaró que no consideró las alegaciones del Municipio de San Juan en torno a la ineficiencia del C.R.I.M. en el cobro de cuentas morosas o el supuesto discrimen mostrado por dicha entidad en contra del Municipio de San Juan **por no estar las mismas dentro del ámbito de revisión provisto por el reglamento aplicable**. Anejó a su informe toda la documentación utilizada al realizar su determinación según ésta había sido sometida por ambas partes.

El Director Ejecutivo del C.R.I.M. adoptó en su totalidad el informe de la oficial examinadora y, en consecuencia, confirmó las liquidaciones finales de las remesas anuales del Municipio de San Juan realizadas por dicha entidad para los años en controversia. Inconforme con dicha determinación y luego de agotada la vía de la

reconsideración, el Municipio de San Juan solicitó revisión de la misma ante el Tribunal de Apelaciones. Señaló que la agencia recurrida había errado al determinar que los cálculos de ingresos municipales habían sido explicados con pruebas suficientes y al negarse a permitir descubrimiento de prueba o desfile de prueba testifical, violando así el debido proceso de ley del Municipio.

El foro apelativo intermedio concluyó que a pesar de que la L.P.A.U. no exige la celebración de una vista evidenciaria en los procedimientos adjudicativos ante agencias administrativas, las circunstancias particulares del presente caso ameritaban la celebración de la misma. Por tal razón, revocó la determinación administrativa y devolvió el caso para la reanudación de los procedimientos ante el C.R.I.M.

En desacuerdo con tal determinación, el C.R.I.M. acudió ante este foro mediante recurso de *certiorari* y solicitud urgente de auxilio de jurisdicción. Señaló que el Tribunal de Apelaciones erró al concluir que el C.R.I.M. había abusado de su discreción al no celebrar una vista evidenciaria y al sostener que las particularidades del presente caso ameritan la celebración de la misma a pesar de que la L.P.A.U. no la requiere.

El 17 de enero de 2007 expedimos el auto y hoy, una mayoría de este Tribunal resuelve que la agencia recurrente venía obligada a autorizar la utilización de los mecanismos de descubrimiento de prueba y a celebrar una vista

evidenciaria "formal". Su conclusión parte de la premisa errónea de que el procedimiento administrativo conducido en el presente caso fue iniciado por la agencia recurrente. De esa manera, razona la mayoría, procedían las solicitudes de descubrimiento de prueba del Municipio de San Juan al amparo de las disposiciones de la sección 3.8 de la Ley de procedimiento administrativo uniforme. 3 L.P.R.A. sec. 2158(a). En segundo lugar, la mayoría concluye que por estar envuelto en el presente caso un "interés gubernamental legítimo" del Municipio de San Juan, procedía la celebración de una vista evidenciaria en la que éste pudiera presentar la evidencia documental, pericial y testifical que entendiera pertinente. Antes de atender tales conclusiones, exponemos el derecho aplicable a la controversia ante nuestra consideración.

## II.

### A.

El Centro de Recaudación de Ingresos Municipales fue creado mediante la Ley número 80 de 30 de agosto de 1991 con el propósito de recaudar, recibir y distribuir los fondos públicos provenientes de distintas fuentes especificadas en la ley entre los municipios. 21 L.P.R.A. sec. 5802. *Véase además*, el artículo 16, 21 L.P.R.A. sec. 5815, de la ley orgánica del C.R.I.M. para el detalle de los fondos que deben ser transferidos a los municipios anualmente. Según dispone la ley, el C.R.I.M. tiene la obligación de conceder anticipos mensuales de tales fondos

a los municipios en la forma dispuesta en el propio estatuto. 21 L.P.R.A. sec. 5803(i).

En particular, el artículo 18 establece en qué consisten dichas remesas mensuales y los parámetros para la transferencia de las mismas. 21 L.P.R.A. sec. 5817. En lo pertinente a la presente controversia, el inciso (d) de dicho artículo establece que el C.R.I.M. vendrá obligado a efectuar cada año una liquidación final de los fondos distribuidos a los municipios mediante remesas mensuales.[26] En caso de existir algún exceso de recaudos en favor del municipio, se le remesará la cantidad que le corresponda de acuerdo a los factores establecidos en el inciso (c) del artículo 18. 21 L.P.R.A. sec. 5817(d). De igual manera, en el caso de que se le haya remesado a los municipios alguna cantidad en exceso, el Banco Gubernamental de Fomento —custodio de los ingresos municipales— será notificado de tal hecho para que proceda a retener de las remesas del siguiente año fiscal aquellas cantidades necesarias para recuperar las sumas remitidas en exceso. *Id.* **Es decir, la propia ley orgánica del C.R.I.M. autoriza la deducción de las cantidades adelantadas en exceso de las remesas municipales del siguiente año fiscal.**

---

[26] La necesidad de efectuar una liquidación final responde a que las remesas se efectúan a base de estimados de los ingresos municipales. 21 L.P.R.A. sec. 5815. Es decir, las remesas constituyen un anticipo de fondos por contribuciones futuras. Mediante la liquidación final se determina, con el beneficio del ingreso real del municipio, si la remesa enviada a éste durante el año en cuestión corresponde a su ingreso real. *Véase*, Artículo IV(M), Reglamento número 6968, *supra*.

Ahora bien, la Ley número 42 de 26 de enero de 2000 autorizó al C.R.I.M. a gestionar y obtener un empréstito en forma de línea de crédito para, entre otros fines, atender la deuda acumulada por los municipios hasta el 30 de junio de 2001 por concepto de remesas enviadas en exceso. 21 L.P.R.A. sec. 5821. Ello según las liquidaciones finales auditadas y certificadas por auditores independientes del C.R.I.M. *Id.* Así, a los municipios que se acogieran a los beneficios de este empréstito se les deduciría de las remesas mensuales la cantidad equivalente al pago de principal e interés de la deuda amortizada. En el caso contrario, aquellos municipios que decidieran no acogerse a los beneficios de dicho financiamiento vendrían obligados a pagar la totalidad de la deuda notificada durante el año fiscal. 21 L.P.R.A. sec. 5827.

La Ley número 42, *supra*, dispuso además el procedimiento que deberían realizar los municipios para acogerse **voluntariamente** a los beneficios de dicho financiamiento. 21 L.P.R.A. sec. 5823. Según surge de la ley, la decisión sobre si acogerse o no al mismo la realiza cada municipio por conducto de su Asamblea Legislativa y su alcalde. **Es decir, el C.R.I.M. no interviene en dicha determinación**.

Como adelantáramos en la relación de hechos, el Municipio de San Juan, **en ejercicio de su prerrogativa**, *supra*, se acogió a los beneficios de este financiamiento en el curso del primer pleito judicial instado en contra del

C.R.I.M. y que culminó en la adopción del Reglamento número 6968, *supra*.   Como resultado, el Municipio amortizó las deudas por concepto de remesas notificadas por el C.R.I.M. para los años fiscales 1998-99 y 1999-2000.[27]   Sin embargo, se reservó el derecho de impugnar dichas deudas mediante el procedimiento administrativo dispuesto en el reglamento de reciente creación.

Por lo tanto, no cabe en el presente caso establecer como un hecho -según lo hace la mayoría- que el C.R.I.M. "obligó" al Municipio de San Juan a tomar un préstamo al amparo de la Ley número 42, *supra*, cuando dicha decisión recaía únicamente en el ente municipal por conducto de su Asamblea Legislativa y su alcalde.   Los descuentos realizados a las remesas del Municipio de San Juan durante julio y agosto de 2002 estaban expresamente autorizados por la ley y no constituyeron un acto para "obligar" al Municipio a acogerse al financiamiento.   Este último debe verse como una medida adoptada por el Municipio para amortizar su deuda por concepto de remesas adelantadas en exceso a fin de evitar mayores desembolsos mientras se

---

[27] Una vez el Municipio de San Juan se acogió al financiamiento viabilizado por la Ley número 42, *supra*, el C.R.I.M. le acreditó retroactivamente las sumas que hasta el momento se le habían descontado por concepto de la deuda amortizada.   Esto es, el C.R.I.M. le devolvió las sumas descontadas de sus remesas correspondientes a los meses de julio y agosto de 2002 como repago de la deuda acumulada por el Municipio de San Juan por concepto de remesas enviadas en exceso durante los años fiscales 1998-99 y 1999-2000.   En su lugar, el C.R.I.M. comenzó a descontarle al Municipio de San Juan la cantidad correspondiente según los términos del préstamo.

dilucidaba el procedimiento de impugnación de las liquidaciones finales.

**B.**

De otra parte, la Ley de procedimiento administrativo uniforme garantiza a las partes en un procedimiento administrativo de naturaleza adjudicativa el derecho a la notificación oportuna de las querellas o reclamos en su contra, a presentar evidencia, a una adjudicación imparcial y a que la decisión sea basada en el expediente. 3 L.P.R.A. sec. 2151. De esta manera, la L.P.A.U. incorpora las garantías mínimas del debido proceso de ley a los procedimientos adjudicativos, toda vez que mediante éstos las agencias intervienen con los intereses propietarios y libertarios de las partes. *Álamo Romero v. Estado Libre Asociado de Puerto Rico*, res. 15 de enero de 2009, 2009 T.S.P.R. 5, 175 D.P.R. ____. En este aspecto, anteriormente hemos expresado que lo esencial al determinar si un procedimiento administrativo es válido a la luz del debido proceso de ley es que el mismo haya sido justo y equitativo. *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 113 (1996).

En relación con la controversia específica ante nuestra consideración, la L.P.A.U. dispone que la determinación sobre si celebrar una vista adjudicativa reside en la agencia y debe estar regida por su ley habilitadora. *Véase*, 3 L.P.R.A. sec. 2157. *Véase además*, D. Fernández, *Derecho Administrativo y Ley de Procedimiento*

*Administrativo Uniforme*, 2da ed., Colombia, Forum, 1993, pág. 309. Por lo tanto, para conocer si existe el requisito de celebrar una vista, se debe atender al estatuto orgánico de la agencia así como a los reglamentos internos aplicables. D. Fernández, *op cit.*, en la pág. 309. Habiendo examinado el primero, procedemos a exponer las disposiciones del Reglamento núm. 6968, *supra*, relevantes a la presente controversia.

### C.

Como lo indica su título, el Reglamento número 6968, *supra*, crea el procedimiento adjudicativo mediante el cual los municipios pueden impugnar las liquidaciones finales anuales de sus remesas hechas por el C.R.I.M. Artículo II, Reglamento número 6968, *supra*. El mismo fue adoptado al amparo de la Ley de procedimiento administrativo uniforme, *supra*, y del artículo 4 de la ley orgánica del C.R.I.M. 21 L.P.R.A. sec. 5803. Este último dispone en su inciso (ñ) que el C.R.I.M. tendrá la facultad para prescribir reglas, reglamentos y normas relacionadas con el cumplimiento de sus funciones y deberes y para la ejecución de las leyes que administre. 21 L.P.R.A. sec. 5803(ñ).

Según el procedimiento dispuesto en el Reglamento número 6968, *supra*, al instar su solicitud de revisión de liquidación final, el Municipio solicitante debe acompañar copia de "todo documento u otra evidencia que sirva de apoyo a sus argumentos". Artículo VI(C)(5), Reglamento número 6968, *supra*. El municipio solicitante debe

presentar además, "una explicación detallada de la manera de hacer la liquidación final anual, y los cálculos envueltos en la misma, que el Municipio solicitante entiende es la correcta". Artículo VI(C)(4), Reglamento número 6968, *supra*. Lo anterior, sin perjuicio de que el oficial examinador le requiera información adicional o aclaratoria pertinente a la resolución de la controversia. *Id*. De igual manera, el C.R.I.M. deberá acompañar con su alegato copia de todo documento que apoye sus argumentos. Artículo VII(D), Reglamento número 6968, *supra*.

El reglamento establece además que las Reglas de Procedimiento Civil y de Evidencia no serán de estricta aplicación al procedimiento adjudicativo sino en la medida en que el foro administrativo lo estime necesario para llevar a cabo los fines de la justicia. Artículo VI(D)(2), Reglamento número 6968, *supra*. Nada se especifica en relación con la celebración de vistas evidenciarias.

**III.**

Según se desprende de la relación de hechos precedente y contrario a lo consignado por la mayoría, el procedimiento administrativo cuya validez está ante nuestra consideración fue iniciado por el Municipio de San Juan al presentar sus escritos de *apelación* al amparo del Reglamento número 6968, *supra*, el cual fue adoptado, dicho sea de paso, como producto de su reclamo judicial a tales efectos. No puede ser otra la conclusión cuando el propio Reglamento establece en su Artículo VI, inciso B que: "El

procedimiento adjudicativo para cuestionar la liquidación final anual de las remesas correspondientes a un Municipio ante el CRIM **<u>se iniciará con la presentación de una solicitud por escrito dirigida al Director Ejecutivo del CRIM</u>**". (Énfasis nuestro). La letra del citado reglamento es clara y no da lugar a otra conclusión, **el procedimiento adjudicativo celebrado por el C.R.I.M. en el presente caso fue iniciado por el Municipio de San Juan al presentar sus "apelaciones" ante dicho organismo con el fin de cuestionar las liquidaciones finales anuales de sus remesas.** Sobra establecer que, como consecuencia de lo anterior, no procede la aplicación de la porción de la sección 3.8 de la L.P.A.U. a la que la mayoría brinda tanto énfasis al resolver que por ser éste un procedimiento iniciado por la agencia administrativa, procede garantizarle al Municipio la utilización de los mecanismos de descubrimiento de prueba.

En segundo lugar, la mayoría asevera que, por el Municipio ostentar "un interés gubernamental legítimo" en relación con sus remesas mensuales, procede la celebración de la vista evidenciaria que solicitara. No tenemos reparos en reconocer al Municipio un interés legítimo en el monto de sus remesas mensuales. De hecho, así lo concluyó el Tribunal de Apelaciones en el curso del primer procedimiento habido entre las partes al ordenar al C.R.I.M. adoptar el reglamento aplicable a la presente controversia para salvaguardar los intereses de la entidad

municipal. Ahora bien, según surge del marco legal precedente, ni la ley orgánica del C.R.I.M. ni el reglamento administrativo aplicable reconocen el derecho a la celebración de una vista en el procedimiento instado por un municipio para impugnar la liquidación final de sus remesas. Debemos auscultar, por tanto, si el procedimiento celebrado en el presente caso cumple con las exigencias del debido proceso de ley. Esto es, si el mismo, a fin de cuentas, fue justo y equitativo a pesar de la negativa de la agencia a celebrar una vista.

Del expediente se deriva que en el trámite administrativo de la presente controversia tanto el Municipio de San Juan como el C.R.I.M. produjeron múltiples documentos que, a su vez, fueron considerados en la adjudicación de la controversia y anejados al informe emitido por la oficial examinadora. De particular importancia resulta que obran en el expediente los detalles de las liquidaciones finales para los años fiscales en controversia.[28] También surge que el C.R.I.M. brindó acceso a los informes de las auditorías realizadas a dichas liquidaciones finales.

Además de lo anterior, ante las mociones en solicitud de celebración de vista evidenciaria y descubrimiento de prueba del Municipio de San Juan, la oficial examinadora ordenó al C.R.I.M. producir la prueba solicitada por el

---

[28] Específicamente, obran en el expediente los informes de liquidación final correspondientes a los años fiscales 1998-99, 1999-2000 y 2004-05 según éstos fueron notificados por el C.R.I.M. al Municipio de San Juan.

Municipio, a saber, la descripción del método y los parámetros utilizados por el C.R.I.M. al realizar los estimados de ingresos del Municipio. Dicha orden fue cumplida por el C.R.I.M.

De otra parte, el informe emitido por la oficial examinadora y posteriormente adoptado por el director ejecutivo del C.R.I.M. es exhaustivo. Primeramente, éste describe los hechos de los cuales surge la controversia y cada uno de los estatutos aplicables a la misma. Posteriormente, brinda una explicación pormenorizada de la manera de realizar el cálculo de las remesas municipales basándose en los parámetros y fórmulas contenidas en la ley orgánica del C.R.I.M., según enmendada. El informe expone a qué se debe la variación en los ingresos del Municipio de San Juan basado en las fórmulas contenidas en la ley y en la documentación producida por las partes. A lo anterior debemos añadir el hecho de que la oficial examinadora consideró todos los planteamientos del Municipio de San Juan susceptibles de resolución al amparo del Reglamento número 6968, *supra*.

En su alegato, el Municipio de San Juan reproduce argumentos que ha esgrimido ante los foros adjudicativos que han intervenido en las diferentes etapas de este pleito. Enfatiza el hecho de que una auditoría realizada en el año 2001 no pudo identificar el flujo de la fuente de ingresos reconocidos y atribuidos a los municipios por el C.R.I.M. para los años 1998-99 y 1999-2000 con el fin de

comprobar la corrección del cálculo de las remesas del Municipio para dichos años en controversia.[29] Sin embargo, como ha quedado evidenciado, dichas determinaciones de ingresos –incluyendo la liquidación de las remesas anuales del Municipio de San Juan– en su momento fueron auditadas por una firma externa.

En relación con la carencia de una auditoría independiente de las liquidaciones finales, la oficial examinadora correctamente concluyó que para los años 1998-99 y 1999-2000, el C.R.I.M. no tenía la obligación de realizar las mismas. Dicha obligación fue impuesta por la Ley número 104 de 15 de agosto de 2001 a partir del año de su aprobación. 21 L.P.R.A. secs. 5806(k) y 5808(v). Además, la auditoría comisionada por el C.R.I.M. en 2001 tuvo como consecuencia un ajuste a favor del Municipio de San Juan por concepto de remesas correspondientes a los 1998-99 y 1999-2000. En suma, no erró la agencia administrativa al confirmar la liquidación final para dichos años fiscales basándose en el informe de auditoría realizado a las mismas.

El Municipio también argumenta que se le violó el debido proceso de ley al negársele los procedimientos formales de descubrimiento de prueba. Sin embargo, como sabemos, los mecanismos de descubrimiento de prueba por lo general no son de aplicación en el contexto de adjudicación

---

[29] Esto es, que no se pudo seguir el rastro a los ingresos recaudados por el C.R.I.M. desde su recolección hasta su repartición entre los municipios.

administrativa, a menos que el reglamento de la agencia y el funcionario que presida el procedimiento los autoricen. 3 L.P.R.A. sec. 2158.

En este aspecto, el Reglamento número 6968, *supra*, establece el derecho de las partes a presentar toda la evidencia documental pertinente a la controversia. La oficial examinadora, por su parte, utilizó la facultad que le confiere el referido reglamento para obtener la información solicitada por el Municipio de San Juan en torno a los procesos de cálculo de ingresos del C.R.I.M. Esto es, por otra vía, el Municipio de San Juan advino en conocimiento de la información solicitada.

De acuerdo con la mayoría, el Municipio se vio imposibilitado de presentar su propia evidencia pericial. Sin embargo, el récord demuestra que el Municipio contó con la información que hubiera posibilitado a sus peritos emitir informes cuestionando los cálculos realizados por el C.R.I.M. A pesar de lo anterior, el Municipio ni siquiera presentó el que a su entender era el cálculo de las remesas correcto. Ello en incumplimiento de las disposiciones del reglamento aplicable. Nótese que, una vez realizado el estimado de ingresos de cada municipio, el cálculo de las remesas correspondientes es un ejercicio aritmético verificable, por lo cual nada impedía que el Municipio de

San Juan presentara el que a su entender era el cálculo correcto.[30]

Por último, considero indispensable hacer referencia a las desafortunadas expresiones de la mayoría en relación con el supuesto trato preferencial demostrado por el C.R.I.M. ante el Municipio de Ponce en comparación con el municipio aquí recurrido. Como bien indicó la oficial examinadora en su informe, dicha alegación estaba fuera de las facultades de revisión que le confería el Reglamento número 6968, *supra*, por lo cual se encontraba imposibilitada de considerarla. En consecuencia, el asunto no pasa de constituir una mera alegación de la parte recurrida y por no haber sido objeto del procedimiento administrativo, nos vemos impedidos de atenderla.[31]

_____

[30] La mayoría alude al "cúmulo de incorrecciones" cometidos por el C.R.I.M. al calcular el monto de las remesas del Municipio de San Juan sin especificar en qué consisten la misma.

[31] Ahora bien, por la seriedad de dichas imputaciones entendemos pertinente hacer constar que en el caso aludido, el Municipio de Ponce inició un procedimiento judicial el **1 de junio de 2000** a fines de impugnar la liquidación de sus remesas efectuada por el C.R.I.M. Luego de varios eventos procesales, las partes acordaron que la causa se ventilaría administrativamente por lo que suscribieron una estipulación en la cual pautaron la naturaleza del procedimiento administrativo al que se sometería la controversia. En el año 2003, el C.R.I.M. dio por terminado dicho procedimiento por entender que la estipulación era nula ya que, a su entender, no procedía brindarle al Municipio de Ponce un procedimiento administrativo formal. El Tribunal de Primera Instancia rechazó tal contención y ordenó la continuación del procedimiento administrativo según acordado. No vemos entonces el trato discriminatorio al que alude la mayoría. Si bien en el caso del Municipio de Ponce se celebró un procedimiento administrativo en el cual el municipio tuvo la oportunidad de realizar descubrimiento de prueba, ello se debió a que así lo había acordado con el C.R.I.M.

En suma, entiendo que el procedimiento conducido ante el C.R.I.M. satisfizo los requerimientos del debido proceso de ley a pesar de la no celebración de una vista ante la agencia administrativa. Considero además que el Municipio de San Juan contó con la información necesaria para ejercer adecuadamente su derecho a impugnar la liquidación final de sus remesas. Erró el Tribunal de Apelaciones al concluir lo contrario y, en consecuencia, devolver el caso al foro administrativo. Por tal razón, revocaría la sentencia recurrida y reinstalaría la determinación emitida por el C.R.I.M. en el presente caso por estar sustentada en la evidencia sustancial obrante en el expediente administrativo.


                        Anabelle Rodríguez Rodríguez
                        Jueza Asociada

---

mediante la estipulación que puso fin al proceso judicial y que los tribunales validaron, ordenando al C.R.I.M. cumplir con la misma. Todo ello con anterioridad a la adopción del Reglamento núm. 6968.